198 So.2d 10 (1967)
CITY OF MIAMI, a Municipal Corporation, Petitioner,
v.
Elzie C. HORNE, Sr., Respondent.
No. 35820.
Supreme Court of Florida.
April 5, 1967.
Rehearing Denied May 17, 1967.
*11 Frates, Fay, Floyd & Pearson, Miami, for petitioner.
Nichols, Gaither, Beckham, Colson, Spence & Hicks and Robert Orseck, Miami, for respondent.
Allen Clements, Jr., Miami Beach, as amicus curiae.
CALDWELL, Justice.
This cause is here on petition for certiorari, the District Court of Appeal, Third District, having certified that its decision "passes upon a question of great public interest" because it determines that "police officials of a municipality are legally responsible for damages caused by persons attempting to escape lawful authority."
The District Court, in its opinion,[1] noted the facts to be:
"Anderson was fleeing in his automobile at a high rate of speed, estimated as high as ninety-five miles per hour, through the streets of Miami and a police car was in pursuit at approximately the same speed when Anderson ran a red traffic light at the intersection of Northwest Seventh Avenue and Twenty-ninth street and collided with the car being driven by plaintiff's wife who had entered the intersection."
The record discloses that shortly before 5:00 A.M., Sergeant Weaver, of the City Patrol, stopped a motorist, Anderson, for violation of a thirty mile per hour speed zone. Sergeant Weaver directed Anderson to bring his driver's license back to the police car. When Anderson was unable to produce his license, Weaver proceeded to write two tickets, one for speeding and the other for driving without a license. Before Weaver could complete the writing of the tickets Anderson left the police car, rushed to his own automobile and left the scene at a high rate of speed. Weaver had not received a reply to an earlier radio request for information on Anderson. By leaving the scene and not accepting the tickets, Anderson committed an offense for which the officer was required to take him in custody.
Sergeant Weaver pursued Anderson, using his red light and his siren, in an attempt to stop him. Anderson raced through the Northwest section of Miami with Weaver following from a distance of a block or more, Weaver slowing down for stop lights while Anderson went through in total disregard.
In response to a call for assistance, Officer Kilgore aided in the pursuit, using his red light and siren. Anderson, driving at speeds estimated as high as ninety-five miles per hour, drove through several stop signs and red lights, with the officers in pursuit, until he reached the intersection where his automobile collided with the car driven by Mrs. Horne, causing her instant death. Officer Kilgore was approximately one block behind Anderson and Sergeant *12 Weaver was just behind Kilgore. The automobiles had not reached the point where a third officer, Maltz, had set up a road block.
The plaintiff sued the defendant City for the wrongful death of his wife. Several defenses were filed, including the defense that if there was negligence it was that of a third party not under the control of the defendant. After extensive discovery the trial court granted the defendant's motion for summary judgment, holding: "The negligence, if any, of the defendant's employees was not the proximate cause of the damages claimed by the plaintiff." The Third District Court of Appeal reversed the trial court holding the movant had failed to carry its burden of showing there was no genuine issue of fact. Judge Barkdull, in a concurring opinion, expressed the view that, if this were a question of first impression in this state, he would be inclined to affirm the summary judgment under review, but, inasmuch as the Mount Dora[2] and St. Petersburg[3] cases appeared to have recognized that a municipality could be liable in such situations, he would concur.
The question of whether, in Florida, municipalities are liable for the negligent acts of its police officers committed within the proper scope of employment has long been settled.[4] The Mount Dora and St. Petersburg decisions, supra, merely restated the general proposition. In addition, the Mount Dora case held the issue of negligence is not properly determinable on motion for summary judgment where the record suggests factual conflict or presents a situation on which a jury might properly draw conflicting inferences. The St. Petersburg case held the facts there involved, together with the inferences to which they are susceptible, should have been presented to the jury. The question here is whether the instant case should have gone to the jury or was properly disposed of by summary judgment.
The complaint charged that the police pursued the vehicle "operated by Robert Anderson at speeds in excess of ninety miles per hour * * * in a negligent, careless and reckless disregard for the lives and property of others."; that the area of pursuit is well populated, that the police officers knew the fleeing vehicle had run several red lights and knew or should have known that "to continue the chase at speeds in excess of ninety miles per hour in the above-described area would create an unreasonable risk * * * and that the foreseeable risk of great bodily harm to members of the public, such as Audrey Horne, outweighed their duty to arrest a mere traffic offender; that the officers nevertheless continued the chase and the aforementioned accident was the result of such carelessness and reckless conduct."
It seems reasonably clear that the complaint charged that the pursuit itself constituted reckless and wanton conduct rather than that, although pursuit per se was lawful, the manner of pursuit, the conduct of the officers in otherwise discharging a necessary duty, was reckless and wanton. It is not made to appear on which theory the trial court ruled there was no liability. The District Court did not draw the distinction nor did it decide whether vel non a municipality is responsible for damages caused by persons attempting to escape arrest.[5]
In this cause it was the police officer's duty when, in his presence, the offender refused to accept the tickets and escaped at excessive speed, ignoring stop signs and red lights, to halt the violations and apprehend the offender. If, by his *13 complaint, the plaintiff charges the officer with reckless conduct simply because he pursued the offender, on the theory that mere pursuit creates a highway danger, we must disagree. Neither would we agree that while the officers should pursue offenders he must do so at lawful rates of speed or, in this case, at thirty miles per hour while the offender moved off at ninety miles per hour. We think the rule is that the officer should take such steps as may be necessary to apprehend the offender but, in doing so, not exceed proper and rational bounds nor act in a negligent, careless or wanton manner.
In determining whether an officer, in pursuit, has acted negligently or recklessly it is to be borne in mind that he is charged with the duty of arresting the offender and must often exceed the precautions normally imposed upon individuals. The Albro case held the standard of care exercised by him must be judged liberally and that the city, exercising its police power for the protection of the public, should not be liable in damages for every mistake of judgment by its officers; that, although under Hargrove v. Town of Cocoa Beach,[6] the city is liable for the negligent acts of its officers, the required care is not the same as that of an individual.[7]
This Court in City of Miami v. Simpson[8] (opinion by Mr. Chief Justice Thornal, author of the Hargrove decision) noted with approval the discussion in the Albro case, supra, "* * * regarding the standard of care to be imposed upon municipal police officers and other city employees charged with similar responsibilities. We share the view of that court that the standard of care imposed should give due regard to the type of duty which is required to be performed in the public interest."
The rule governing the conduct of police in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender. Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape.[9]
*14 Finding no record evidence of lack of due care in the operation of appellant's police vehicle, we hold the decision of the trial judge correctly disposed of the cause. The decision of the District Court of Appeal is quashed and the judgment of the trial court is reinstated.
Reversed.
THOMAS, DREW and ERVIN, JJ., concur.
SPECTOR, District Court Judge, concurs in judgment with Opinion.
THORNAL, C.J., dissents with Opinion.
SPECTOR, District Court Judge (concurring in judgment).
I agree with the conclusion but in the last paragraph of the majority opinion the rationale of the case is stated to be that there is "no record evidence of lack of due care." It seems to me that it should turn on no record evidence of direct proximate cause between the officer's speeding and the injury.
THORNAL, Chief Justice (dissenting).
I do not disagree with the pronouncements of law reflected by the majority opinion. However, I do disagree with the holding of the majority, and the trial judge, who disposed of the questions of negligence and probable cause as a matter of law. It is my view that there were sufficient factual conflicts and conflicting inferences which could be drawn from the facts, to generate jury issues on these questions, and, therefore, on the ultimate responsibility of the petitioner for the acts of its employees. If I were a juror in this case, I suspect that I would find for the petitioner on the record presented here. However, I am not a juror and I am extremely reluctant to encroach judicially on the jury function. For this reason I would discharge the writ and send the matter back to the trial court for a trial on the merits, as did the District Court of Appeal.
NOTES
[1] Horne v. City of Miami, 190 So.2d 409 (Fla.App.3rd 1964).
[2] Town of Mount Dora v. Bryant, 128 So.2d 4 (Fla.App.2nd 1961).
[3] Evanoff v. City of St. Petersburg, 186 So.2d 68 (Fla.App.2nd 1966).
[4] Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957).
[5] See, 83 A.L.R.2d 452 "Liability of governmental unit or its officer for injury or damage from operation of vehicle pursued by police."
[6] Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957).
[7] City of Miami v. Albro, 120 So.2d 23, 26 (Fla.App.3rd 1960): "Although the Hargrove case, supra, established the liability of the city for the negligent acts of its officers in the performance of governmental functions it does not follow that the duty of care of the city is the same as that of an individual. The law imposes upon the city and the officers thereof duties which they must perform. In the performance of these duties the city and the officers thereof must take actions which an individual is not ordinarily called upon to take. For example, an officer of the city in directing traffic must expose himself to the dangers of traffic, and therefore the standard of care exercised by him must be judged more liberally. See Radtke v. Loud, Fla.App. 1957, 98 So.2d 891, 894. It is unthinkable that a municipal corporation exercising its police power for the protection of the public should be liable in damages for every mistake of judgment by its officers."
[8] 172 So.2d 435 (Fla. 1965).
[9] See, Wrubel v. State, 11 Misc.2d 878, 174 N.Y.S.2d 687, 689 (1958):

"In the presence of a violation of law it is the officer's duty to take steps to suppress the offense and apprehend the offender. At its inception the offense being committed was only a traffic infraction. However, it developed, in the opinion of the Court, into reckless driving, a misdemeanor, also into resisting an officer, and other crimes which could be made out of the incident as it developed.
"Claimants' predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer to pursue, at an otherwise lawful rate of speed, a lawbreaker traveling at an unlawful rate of speed, or to ignore him in the first place.
* * * * *
"In so holding we do not say that it is impossible for an officer to be negligent or reckless in the performance of his duties. That it is possible is amply pointed out by some of the cases cited by claimants. * * *
"A police officer has a right to use whatever means necessary to make an arrest and unless he exceeds proper and rational bounds or acts in a negligent, careless or wanton manner, he is not liable for damages sustained, even by innocent parties, under the circumstances that arose herein.";
Brechtel v. Lopez, 140 So.2d 189, 193 (La. App. 1962):
"In our opinion the proximate cause of the accident was speed, the grossly excessive speed of young Lopez which induced the speed of the police, who not only had the right but the duty to attempt to overtake and apprehend him.";
quoted with approval in City of St. Petersburg v. Shannon, 156 So.2d 870, 871 (Fla.App.2d 1963); Chambers v. Ideal Pure Milk, 245 S.W.2d 589, 591 (Ky. 1952):
"Police cannot be made insurers of the conduct of the culprits they chase. It is our conclusion that the action of the police was not the legal or proximate cause of the accident, and that the jury should have been instructed to find for the appellants.";
83 A.L.R.2d 452 and cases cited therein.