No. 54,477

CHARLES R. THORNTON, *Appellant,* v. VICTOR L. SHORE, DONALD L. BENDER, and VIRGINIA McCUE, Administrator of the Estate of Kenneth E. McCue, III, Deceased, *Appellees.*

No. 54,930

KENNETH E. McCUE and VIRGINIA McCUE, *Appellants,* v. VICTOR L. SHORE; DONALD L. BENDER; STATE OF KANSAS; and THE CITY OF LAWRENCE, KANSAS, a municipal corporation, *Appellees.*

(666 P.2d 655)

No. 54,477

Opinion on rehearing filed July 8, 1983. (For original opinion affirming see 232 Kan. 394, 654 P.2d 475 [1982].)

*James E. Rumsey,* of Rumsey & Hooge, of Lawrence, argued the cause and was on the brief for the appellant.

*Leslie A. Kulick,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for appellees.

No. 54,930

Opinion filed July 8, 1983.

*Michael E. Riling,* of Riling, Norwood, Burkhead & Fairchild, Chartered, of Lawrence, argued the cause, and *Wesley M. Norwood,* of the same firm, was with him on the brief for appellants.

*Leslie A. Kulick,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for appellees.

The opinion of the court was delivered by

McFARLAND, J.: Charles R. Thornton, Kenneth E. McCue and Virginia McCue, plaintiffs in these consolidated wrongful death

actions, appeal from the district court's entry of summary judgment in favor of defendant police officer, Victor L. Shore. Plaintiffs' decedents were killed when their automobile was struck by a vehicle driven by defendant Donald Bender. At the time of the collision, the Bender vehicle was being pursued by Officer Shore who was attempting to arrest Bender for multiple traffic violations. The district court found Officer Shore operated his vehicle in compliance with K.S.A. 8-1506 and, accordingly, was immune from liability pursuant to K.S.A. 1982 Supp. 75-6104(*d*) of the Kansas Tort Claims Act (K.S.A. 1982 Supp. 75-6101 *et seq.*). On appeal plaintiffs challenge the propriety of this determination.

The uncontroverted facts must be set forth in detail. On November 18, 1979, defendant Victor L. Shore, a Kansas University police officer, was in a marked patrol car which was parked on Jayhawk Boulevard across from Hoch Auditorium on the university campus. The officer was performing radar speed checks on passing vehicles. At about 1:30 a.m. a blue 1978 Jeep, later found to be registered to and driven by defendant Donald L. Bender, went by Officer Shore at 15 miles per hour (m.p.h.) above the posted 20 m.p.h. speed limit. Officer Shore activated his overhead emergency warning lights and pulled up behind the Jeep. Instead of stopping, the Jeep speeded up. The officer then turned on his siren. In response thereto, the Jeep slowed down briefly but then accelerated. In short order, with Officer Shore in pursuit, Bender committed numerous other traffic violations including attempting to elude the officer, speeding, running stop signs and reckless driving.

The route of the chase was Jayhawk Boulevard to West Campus Road to Eleventh Street, briefly onto Mississippi Street, then back to Eleventh Street. At the intersection of Eleventh and Connecticut streets, slightly east of the Lawrence downtown area, Bender ran a stop sign and collided with the McCue vehicle, killing Kenneth E. McCue, III, and Margie Thornton. Bender, who had consumed beer and smoked marijuana during the evening, was subsequently convicted of involuntary manslaughter.

Throughout the chase, Officer Shore had his emergency lights and siren activated and informed his dispatcher of the pursuit. The officer was about a half block behind the Jeep at the time of the collision.

Plaintiff Charles R. Thornton, father of decedent Margie Thornton, brought a wrongful death action against Victor L. Shore, Donald Bender and Virginia McCue, as administrator of the estate of Kenneth E. McCue, III. Summary judgment was entered in favor of defendant Shore. On appeal, the judgment was affirmed by an equally divided court. *Thornton v. Shore*, 232 Kan. 394, 654 P.2d 475 (1982). Subsequently, plaintiff's motion for rehearing was granted and the appeal was consolidated with that of *McCue v. Shore* hereinafter discussed.

Kenneth E. McCue and Virginia McCue, parents of decedent Kenneth E. McCue, III, brought a wrongful death action against Victor L. Shore, Donald Bender, State of Kansas, and the City of Lawrence. Summary judgment was entered in favor of Officer Shore and plaintiffs appeal therefrom.

As previously noted, this consolidated appeal is concerned solely with the propriety of the summary judgment entered in each case in favor of Officer Shore. The district court found, as a matter of law, Officer Shore had operated his vehicle in compliance with the emergency vehicle statute, K.S.A. 8-1506 and, based thereon, was immune from liability pursuant to K.S.A. 1982 Supp. 75-6104(*d*) of the Kansas Tort Claims Act (K.S.A. 1982 Supp. 75-6101 *et seq.*). We agree with the district court's ultimate determination that Officer Shore had no liability and hence was entitled to summary judgment herein. However, we reach that conclusion on a different rationale.

K.S.A. 8-1506 provides:

"(*a*) The *driver of an authorized emergency vehicle*, when responding to an emergency call or *when in the pursuit of an actual or suspected violator of the law*, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(*b*) The driver of an authorized emergency vehicle may:

"(1) Park or stand, irrespective of the provisions of this article;

"(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"(3) *Exceed the maximum speed limits so long as such driver does not endanger life or property*;

"(4) Disregard regulations governing direction of movement or turning in specified directions; and

"(5) Proceed through toll booths on roads or bridges without stopping for payment of tolls, but only after slowing down as may be necessary for safe operation and the picking up or returning of toll cards.

"(c) The *exemptions* herein *granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal* meeting the requirements of K.S.A. 8-1738 and *visual signals* meeting the requirements of K.S.A. 8-1720, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(d) *The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others.*" (Emphasis supplied.)

It is undisputed Officer Shore, at all times in question, was the "driver of an authorized emergency vehicle . . . in the pursuit of [a] . . . violator of the law." It is also uncontroverted Officer Shore's vehicle did not collide with decedent's vehicle and was not physically involved in the tragic collision which took the lives of Margie Thornton and Kenneth E. McCue, III. It is further undisputed the visual and audible signal devices specified in K.S.A. 8-1506(c) were activated at all pertinent times.

The appellants contend the *continuance of the chase* after the extreme recklessness of Bender became apparent to Officer Shore was in violation of K.S.A. 8-1506(d). They argue said statute imposes a duty upon law enforcement officers to abandon pursuit or take alternative action, such as setting up a roadblock. The essence of this position is the privilege to pursue law violators granted to law enforcement officers specified in K.S.A. 8-1506 is limited to pursuit of rational and responsible violators unless the setting is remote and isolated. We do not agree.

Inherent in any emergency run, whether it be by a police, fire department or ambulance vehicle, is the risk of injury to innocent persons. It is a matter of public policy whether the benefit accruing to the public by allowing such emergency runs outweighs the risk of harm. The legislature has determined the benefit is greater than the risk and has granted privileges to the drivers of such vehicles subject to conditions specified in K.S.A. 8-1506.

It should be noted K.S.A. 8-1404 defines authorized emergency vehicles as:

"[S]uch fire department vehicles, police vehicles and ambulances as are publicly owned and such other publicly or privately owned vehicles as are designated by the secretary of transportation pursuant to K.S.A. 8-2010."

K.S.A. 8-2010 provides:

"The secretary of transportation shall designate any particular vehicle as an authorized emergency vehicle upon a finding that designation of such vehicle is necessary to the preservation of life or property or to the execution of emergency governmental functions. The designation shall be in writing and the written designation shall be carried in the vehicle at all times, but failure to carry the written designation shall not affect the status of the vehicle as an authorized emergency vehicle."

It may be concluded that ambulance, fire department and police vehicles are automatically declared to be "necessary to the preservation of life or property or to the execution of emergency governmental functions" and a specific finding of such status is unnecessary.

Before the privileges and immunities of K.S.A. 8-1506 may be afforded the driver thereof, the authorized emergency vehicle must be on an emergency run, K.S.A. 8-1506(a), and must comply with audible and visual signal requirements of K.S.A. 8-1506(c). The audible signal device must be in conformity with K.S.A. 8-1738(d) which provides:

"(d) Every authorized emergency vehicle shall be equipped with a siren, whistle or bell, capable of emitting sound audible under normal conditions from a distance of not less than five hundred (500) feet and of a type approved by the secretary of transportation, but such siren shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which said latter events the driver of such vehicle shall sound said siren when reasonably necessary to warn pedestrians and other drivers of the approach thereof."

The visual signal device must be in conformity with K.S.A. 8-1720 which provides:

"(a) Every authorized emergency vehicle, in addition to any other equipment required by this act, shall be equipped with signal lamps mounted as high and as widely spaced laterally as practicable, which shall be capable of displaying to the front two (2) alternately flashing red lights located at the same level and to the rear two (2) alternately flashing red lights located at the same level, or in lieu thereof, any such authorized emergency vehicle shall be equipped with at least one rotating or oscillating light, which shall be mounted as high as practicable on such vehicle and which shall display to the front and rear of such vehicle a flashing red light or alternate flashes of red and white lights in combination. All lights required or authorized by this subsection shall have sufficient intensity to be visible at five hundred (500) feet in normal sunlight.

"(b) A police vehicle when used as an authorized emergency vehicle may, but need not, be equipped with flashing red lights specified herein, but any flashing

lights, including rotating or oscillating lights, used on a police vehicle, other than the flashing lights specified in K.S.A. 8-1722, shall be red in color."

The duty of a driver upon the immediate approach of an authorized emergency vehicle with activated audible and visual signals is prescribed in K.S.A. 8-1530 as follows:

"(a) Upon the immediate approach of an authorized emergency vehicle making use of an audible signal meeting the requirements of subsection (d) of K.S.A. 8-1738 and visual signals meeting the requirements of K.S.A. 8-1720, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall drive immediately to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

"(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

Audible and visual signals serve a twofold purpose: (1) they give a safety warning to other users of the roadway; and (2) they assist in clearing a path for the emergency vehicle to travel. In the case of a police vehicle attempting to stop a law violator, such signals serve an additional purpose—to advise the violator to stop his vehicle. See K.S.A. 8-1568 which provides in pertinent part:

"(a) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty as provided by subsection (b). The signal given by the police officer may be by hand, voice, emergency light or siren. The officer giving such signal shall be in uniform, prominently displaying such officer's badge of office, and the officer's vehicle shall be appropriately marked showing it to be an official police vehicle."

The privileges and immunities granted to the drivers of authorized emergency vehicles are not *carte blanche*. In *Shawnee Township Fire District v. Morgan*, 221 Kan. 271, 559 P.2d 1141 (1977), we discussed the purpose and effect of K.S.A. 8-1506 as follows:

"Because plaintiff's driver was the operator of an authorized authorized emergency vehicle he was entitled to the privileges and immunities set forth in K.S.A. 1971 Supp. 8-505(c) (now K.S.A. 8-1506[b]), which stated:

" '(c) The driver of an authorized emergency vehicle may: (1) Park or stand, irrespective of the provisions of this act. (2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation. (3)

Exceed the maximum speed limits so long as he does not endanger life or property. (4) Disregard regulations governing direction of movement or turning in specified directions.'

"Although the statute endowed the driver with certain immunities, they were not absolute in nature. K.S.A. 1971 Supp. 8-505(e) (now K.S.A. 8-1506 [d]) provided:

" '(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.'

"K.S.A. 8-536 [Corrick] (now part of K.S.A. 8-1506), relating to speed limitations, provided:

" 'The speed limitations set forth in this act shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street or highway, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.'

"K.S.A. 1971 Supp. 8-554 (now K.S.A. 8-1530) included the following provision:

" '(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.'

"It is important to recognize that K.S.A. 8-505(e) [Corrick] was amended after this court last construed it in *Scogin v. Nugen,* [204 Kan. 568, 464 P.2d 166 (1970)]. The phrase 'ordinary negligence,' which established the standard of care for emergency vehicle drivers in *Scogin,* was deleted by the legislature in 1970. Because it is a fundamental rule of law that a change in phraseology or the deletion of a phrase in amending or revising a statute raises a presumption that a change of meaning was also intended, the standard of care set forth in *Scogin* is not controlling in this case. (*McGowen v. Southwestern Bell Tel. Co.,* 215 Kan. 887, 891, 529 P.2d 97 [(1974)], and cases cited therein.)

"Our reading of K.S.A. 1971 Supp. 8-505(e), as amended by the legislature in 1970, leads us to the conclusion that the standard of 'ordinary negligence' is no longer applicable to the driver of an emergency vehicle. (See, Bennett, The 1970 Legislature in Review, 39 J.B.A.K. 107, 108 [1970].) . . .

"*The standards of care charged to the driver of an emergency vehicle and to the driver of an ordinary vehicle are not the same. The privileges and immunities granted to the driver of an emergency vehicle are not available to the driver of an ordinary vehicle. Notwithstanding the grant of immunities, the statutes require the driver of an emergency vehicle to drive with 'due regard for the safety of all persons,' and further provide the immunities do not protect the driver from the consequences of his 'reckless disregard for the safety of others.' Even though the use of the word 'reckless' suggests an element of wantonness, we believe it was the intent of the legislature to charge the driver of an emergency vehicle with due care under the existing facts and circumstances. The facts and circumstances include the privileges and immunities granted by*

*statute. The test of due care (or due regard as used in the statute), as applied to the driver of an emergency vehicle, is whether with the privileges and immunities provided by statute he acted as a reasonably careful driver.*

"*An important factor to be considered under this test is the right of the driver of an emergency vehicle to rely on the duty of an ordinary driver.* Under K.S.A. 1971 Supp. 8-554 (now K.S.A. 8-1530) *the driver of an ordinary vehicle is under a duty to yield the right of way* to an emergency vehicle by immediately pulling parallel and as close as possible to the right edge or side of the road, clear of any intersection, and remaining there until the emergency vehicle has passed. *Although the driver of an emergency vehicle is not permitted to act on the blind assumption that this will be done, he has the right to assume other drivers will yield the right of way as required by law until it is otherwise apparent.*" 221 Kan. 277-79. (Emphasis supplied.)

The privileges and immunities granted to police officers under K.S.A. 8-1506 would indeed be hollow if the test of due care (or due regard as used in the statute) were extended to include the acts of the fleeing motorist whom the officer is trying to apprehend. The net effect of such an extension would be to make the officer the insurer of the fleeing violator, be he or she a mentally deranged person, prison escapee, murderer, drug addict or drunk.

A number of jurisdictions have discussed the undesirable effects of making the law enforcement officer the insurer of this highly irresponsible group. Representative of the majority. view which holds the law enforcement officer is not liable for the acts of the fleeing violators are the following cases.

In *Reenders v. City of Ontario,* 68 Cal. App. 3d 1045, 137 Cal. Rptr. 736 (1977), city police were hotly pursuing a motorcycle. The driver was wanted for aggravated assault and hit and run. The police cars were operated with emergency lights and sirens. Speeds of 80 to 100 m.p.h. were attained and numerous stop light violations and other acts of reckless driving by the violator were noted. By virtue of heavy traffic the police could not immediately apprehend the violator. Ultimately the violator's motorcycle collided with plaintiff's car at an intersection. Plaintiff contended but for the negligence of the police in pursuing the violator, the violator would not have run the red light at the intersection where plaintiff was struck. The California Court of Appeals held the police were not negligent. In so holding the California court wrote:

"[T]he relationship between the defendant's conduct and plaintiff's injury is not necessarily a direct one.

"No moral blame attaches to City's conduct. Its police officers were attempting to apprehend and remove from the public streets a man who had reportedly been drinking and driving a motorcycle in a reckless and dangerous manner and who was suspected of assault with a deadly weapon as well as reckless driving and numerous other violations of the Vehicle Code.

"As to the policy of preventing future harm, who can say whether greater harm would result from the imposition or nonimposition of a duty upon municipalities to refrain from pursuing a lawbreaker already engaged in reckless and dangerous operation of a motor vehicle on the public streets. The injury in this case was tragic. Conceivably, however, even more tragic results could have ensued had [the violator] not been pursued. Suppose he had lost control of his motorcycle and had run into a group of children standing on the sidewalk, killing or maiming several of them.

"To impose a duty upon municipalities not to pursue a lawbreaker already engaged in dangerous conduct on the city streets would obviously cast a considerable burden on such cities and have serious consequences to the community. One of the prime functions of government is to insure law-abiding, orderly conduct. What is a law enforcement officer to do faced with a situation such as that confronting the police officers in this case? Nothing? The imposition of a duty not to pursue would severely restrict necessary law enforcement conduct without any guaranty that serious injury to members of the public might not ensue anyway." 68 Cal. App. 3d at 1053-54.

Continuing:

"In our assessment, considerations of public policy preponderate against the imposition of a duty upon a municipality and its police officers to refrain from pursuing a lawbreaker who is already operating a vehicle on the public streets and thoroughfares in a reckless and dangerous manner." 68 Cal. App. 3d at 1054.

The Kentucky Court of Appeals (then Kentucky's highest court) reached the same result in *Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589 (Ky. 1952). In *Chambers* the police noticed a suspicious vehicle near a business and when they went to investigate the vehicle sped away. The police pursued. Eventually, the violator's car collided with a vehicle belonging to the plaintiff. The police car had its warning lights and siren on and the police were subject to a statute akin to K.S.A. 8-1506. The Kentucky court held the police were not liable to the plaintiff.

"Charged as they were with the obligation to enforce the law, the traffic laws included, they would have been derelict in their duty had they not pursued him. The police were performing their duty when Shearer, in gross violation of his duty to obey the speed laws, crashed into the milk wagon. *To argue that the officers' pursuit caused Shearer to speed may be factually true, but it does not follow that the officers are liable at law for the results of Shearer's negligent speed. Police, cannot be made insurers of the conduct of the culprits they chase.*" 245 S.W.2d at 590-91 (Emphasis supplied.)

In *City of Miami v. Horne,* 198 So. 2d 10 (Fla. 1967), the Florida Supreme Court was confronted by a case where decedent's vehicle was hit by an offender trying to elude a pursuing police car. As in the instant action, the police officer was operating his lights and siren, and reduced his speed at intersections where he did not have the right-of-way. The violator went through all intersections in total disregard of the danger to others. Eventually the police officer came upon an intersection where the violator's car had collided with the decedent's automobile, killing her instantly. Plaintiff contended the manner of the police pursuit was negligent. The Florida court rejected the plaintiff's claim:

"[I]t was the police officer's duty when, in his presence, the offender refused to accept the tickets and escaped at excessive speed, ignoring stop signs and red lights, to halt the violations and apprehend the offender." 198 So. 2d at 12.

Continuing:

"In determining whether an officer, in pursuit, has acted negligently or recklessly it is to be borne in mind that he is charged with the duty of arresting the offender and must often exceed the precautions normally imposed upon individuals. The [*City of Miami v. Albro,* 120 So. 2d 23 (Fla. Dist. Ct. App. 1960)] case held the standard of care exercised by him must be judged liberally and that the city, exercising its police power for the protection of the public, should not be liable in damages for every mistake of judgment by its officers . . . ." 198 So. 2d at 13.

In concluding, the Florida Supreme Court observed in *City of Miami v. Simpson,* 172 So. 2d 435 (Fla. 1965), it had previously approved the Florida District Court of Appeal opinion in *City of Miami v. Albro,* 120 So. 2d 23 (Fla. Dist. Ct. App. 1960).

" 'We share the view of [the *Albro*] court that the standard of care imposed should give due regard to the type of duty which is required to be performed in the public interest.'

"The rule governing the conduct of police in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, *he is not responsible for the acts of the offender.* Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape." 198 So. 2d at 13. (Emphasis supplied.)

*Roll v. Timberman,* 94 N.J. Super. 530, 229 A.2d 281, *certification denied* 50 N.J. 84 (1967), involved a situation where a violator's car collided with plaintiff's vehicle and plaintiff alleged a police officer was negligent in pursuing the violator at an excessive speed. The New Jersey Superior Court, Appellate Division, rejected the claim stating:

"Police officers are charged with the duty of enforcing the motor vehicle laws. *N.J.S.A.* 39:5-1. They have the power to arrest without warrant when the violation takes place in their presence. *N.J.S.A.* 39:5-25. While engaged in the apprehension of violators of the law, or of persons charged with, or suspected of, any such violation, they are exempt from speed regulations. *N.J.S.A.* 39:4-103.

"The decisive issue in this case is whether a police officer is liable for damage caused by a vehicle operated by a fleeing law violator who is being pursued by the officer in the performance of his duty.

"The precise question has not been dealt with in any of the reported decisions in our State. *However, the majority view expressed in other jurisdictions in similar cases holds that the police officer is not liable.* See *Chambers v. Ideal Pure Milk Co.,* 245 S.W.2d 589 (Ky. Ct. App. 1952); *Morris v. Coombs' Adm'r,* 304 Ky. 187, 200 S.W.2d 281 (Ct. App. 1947); *Pagels v. City and County of San Francisco,* 135 Cal. App. 2d 152, 286 P.2d 877 (D. Ct. App. 1955); *Draper v. City of Los Angeles,* 91 Cal. App. 2d 315, 205 P.2d 46 (D. Ct. App. 1949); *United States v. Hutchins,* 268 F.2d 69, 83 A.L.R.2d 447 (6 Cir. 1959); *Wrubel v. State of New York,* 11 Misc. 2d 878, 174 N.Y.S. 2d 687 (Ct. Claims 1958).

"The reasoning which underlies the rejection of liability in these cases is two-fold: (1) it is the duty of a police officer to apprehend those whose reckless driving makes use of the highway dangerous to others; (2) the proximate cause of the accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving. Typical of this rationale is the court's statement in *Draper v. City of Los Angeles, supra:*

" 'It is true that he [the pursued] was endeavoring to escape from them [the police] and for that reason, perhaps, was driving recklessly, but that was his affair, not theirs. Although the pursuit no doubt contributed somewhat to his reckless driving, the officers were under no duty to allow him to make a leisurely escape.' (205 P.2d, at p. 48)" 94 N.J. Super. at 535-36. (Emphasis supplied.)

## Continuing:

"We are in accord with the majority view as above expressed. When Officer Martin observed Timberman violate the motor vehicle laws it became the officer's duty to apprehend him. When he pursued Timberman the officer was exempt from speed regulations. He was performing his duty when Timberman, in gross violation of the motor vehicle laws, crashed into plaintiff's car. To argue that the officer's pursuit caused Timberman to speed may be factually true, but it does not follow that the officer is liable at law for the results of Timberman's negligent speed. *Police cannot be made insurers of the conduct of the culprits they chase. Chambers v. Ideal Pure Milk Co., supra,* 245 S.W.2d at pp. 590-591.

"We have carefully reviewed the record. We find no evidence of actionable negligence on the part of Officer Martin. His pursuit of Timberman was not the legal or proximate cause of the accident. The motions by defendants for judgment of involuntary dismissal made at the close of the case should have been granted." 94 N.J. Super. at 537-38. (Emphasis supplied.)

New York courts have considered the matter of police liability

for a fleeing violator's collision with an innocent victim on a number of occasions. In *Wrubel v. State of New York*, 11 Misc. 2d 878, 174 N.Y.S.2d 687 (1958), the New York Court of Claims dealt with a case where a state trooper, with lights and siren on, chased a speeder and the speeder collided with the plaintiff. Plaintiff sued the State of New York.

"Distilled to its essence, the case presents one question: Is the State liable for the damage occasioned by a fleeing lawbreaker while being pursued by a State trooper who was performing his duty?

"We do not believe so under the circumstances here.

"In the presence of a violation of law it is the officer's duty to take steps to suppress the offense and apprehend the offender. At its inception the offense being committed was only a traffic infraction. However, it developed, in the opinion of the court, into reckless driving, a misdemeanor, also into resisting an officer, and other crimes which could be made out of the incident as it developed.

"*Claimants' predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer to pursue, at an otherwise lawful rate of speed, a lawbreaker traveling at an unlawful rate of speed, or to ignore him in the first place.*

"*An operator who is speeding, or who is a reckless driver on the highway, would know that all he had to do was to go faster—and under claimants' theory escape would be possible—there would be no chase. A burglar, bank robber or any other felon could threaten to shoot and under claimants' theory escape would be possible and arrest avoided. It is fantastic to further expand claimants' theory—such thinking would place a police officer in the same category as the Marquis of Queensbury in a pier six brawl.*" 11 Misc. 2d at 879-80. (Emphasis supplied.)

Continuing:

"A police officer has a right to use whatever means necessary to make an arrest and unless he exceeds proper and rational bounds or acts in a negligent, careless or wanton manner, he is not liable for damages sustained, even by innocent parties, under the circumstances that arose herein. We think the action of the trooper was proper. The contention of claimants is unsound.

"The proximate cause of the accident was the speeding of the Buick car. It was the reckless manner in which William Coon conducted himself and not the action of officer Marchione that caused this accident. With an earnestness amounting to almost prescience, Marchione, at the risk of his own life, attempted to curb this hazard. He is to be commended on the manner in which he endeavored to perform his duty as an officer of the law. The evidence in no way indulges the conclusions that he was the cause or contributed thereto.

"If officer Marchione had abandoned his duty and the Buick car had proceeded unmolested and a serious accident had resulted, he would have been subjected to severe criticism for failing to perform his duty to which the public is entitled. (Any automobile on the highway could have been involved in such an acci-

dent—even claimants' automobile.) It would be most unwise to discourage police officers in time of emergency. Such a course would tend to lessen law enforcement.

"In an emergency a police officer must do his duty. He should not be careless or reckless. He should act in a prudent and in as careful a manner as he possibly can. He should not be hesitant and should act promptly and resolutely. Reluctance to act in an emergency might indeed result, to some extent, in stripping the community of proper and adequate protection against malefactors.

"The action of the trooper must be weighed in the light of the circumstances as they arose and not measured by subsequent developed facts. Indeed, public policy militates against denying protection to the officer under the circumstances herein involved.

"This may seen severe in view of the damages suffered by two innocent people but no other conclusion is possible. To give claimants a judgment herein would mean extending the liability of the State to unrealistic limits. Further discussion is unnecessary.

"The claims herein, and each of them, are dismissed." 11 Misc. 2d at 880-81.

In *Stanton v. State,* 29 App. Div. 2d 612, 285 N.Y.S.2d 964 (1967), *aff'd* 26 N.Y.2d 990, *reh. denied* 27 N.Y.2d 817 (1970), a New York appellate court dealt with a case where a state trooper, after some difficulty, managed to stop a speeder only to see him flee down the wrong side on a highway. The officer pursued, turning on flashing red lights and siren and moving a spotlight from side-to-side to give warning to oncoming vehicles. The violator's automobile collided with an innocent motorist, killing him. The motorist's estate brought an action against New York. Besides the factual similarities, *Stanton* involved the application of a New York traffic statute (N.Y. Veh. & Traf. Law § 1104 [McKinney 1960]) comparable to K.S.A. 8-1506.

The New York court noted:

"In order to establish liability against the State for the injury and death of claimant's intestate, the claimant must prove the negligence of the State, and further prove that such negligence was the proximate cause of the injury and resulting death." 29 App. Div. 2d at 612-13.

Continuing:

"Examining the manner in which Trooper Radloff operated his patrol car and considering his use of the siren, flashing light, and spotlight to warn oncoming motorists, he did in fact drive with due regard for the safety of all persons using the highway." 29 App. Div. 2d at 613.

Further:

"The majority view expressed in other jurisdictions in similar cases holds that a police officer is not liable for damages caused by a vehicle being pursued by the

officer in the performance of his duties. (83 ALR 2d 452; *Pagels v. City and County of San Francisco*, 135 Cal. App. 2d 152; *Draper v. City of Los Angeles*, 91 Cal. App. 2d 315; *United States v. Hutchins*, 268 F.2d 69; *Roll v. Timberman*, 94 N.J. Super. 530; *Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589 [Ky.].)" 29 App. Div. 2d at 613-14.

After quoting from *Roll v. Timberman*, 94 N.J. Super. 530, and *Wrubel v. State of New York*, 11 Misc. 2d 878, the New York court concluded:

"Considering the entire record, it is our opinion that it was not the manner in which Trooper Radloff drove his patrol car which was the proximate cause of this accident, but rather the manner in which Hayden drove his vehicle which was the proximate cause. Trooper Radloff's actions were merely those of a police officer performing his duty in an emergency situation. He was neither careless nor reckless and acted in as prudent and careful a manner as possible under the circumstances. His actions must be weighed in the light of the circumstances as they developed and not by subsequent facts or in retrospect. If we were to adopt the claimant's theory that a trooper in attempting to remove a danger on the highway acts negligently by increasing the danger when he exceeds the speed limit in the pursuit of a wrongdoer, police officers would be reluctant to act in such emergency situations with the result that the *public would be deprived of proper and adequate protection against such violators. (Wrubel v. State of New York, supra.)*" 29 App. Div. 2d at 614. (Emphasis supplied.)

The New York Court of Appeals in affirming the lower appellate court noted the human emotions of such a tragic event were not a substitute for the necessary elements of an action.

"While it is most unfortunate that bystanders are sometimes innocently involved and injured by the police in the performance of their duties, such emotional and understandable human considerations are not a substitute for proof of negligence. The trooper in the instant case was engaged in the regulation of highway traffic. He was faced with an emergent situation and chose what he considered, in his best judgment, to be the most effective means of dealing with a motor vehicle operator who was endangering the lives of other motorists on the highway. While hindsight can often furnish reasons for following one course or another, the acts of the trooper here must be considered as of the time when, and circumstances under which, they occurred. With that in mind, we find that his conduct was not unreasonable or negligent." 26 N.Y.2d at 991-92.

A case the district court herein relied upon in granting Officer Shore's summary judgment was *State of West Virginia v. Fidelity & Cas. Co. of N.Y.*, 263 F. Supp. 88 (D. W. Va. 1967), wherein plaintiff brought an action against police who chased an escapee who collided with plaintiff. Plaintiff contended the police pursued in a negligent manner resulting in the escapee hitting plaintiff. The federal district court forcefully rebuked the notion

the officer's pursuit of the escapee was the proximate cause of plaintiff's injury.

"The question of an officer's liability for injuries or damages arising from the operation of a vehicle pursued by him in the line of duty does not appear to have been considered in West Virginia or in many other jurisdictions. However, in those instances where it has been treated, the officer has generally been held not liable. See Annot. 83 A.L.R.2d 452 (1962). We must not forget that the primary duty was upon the pursued to stop, and although an utter willful, reckless, disregard for the life and property of third parties, such as an officer's continued high speed chase through a crowded school zone, would be difficult to excuse, the instant complaint indicates no such facts. It is hardly necessary to point out the overriding public policy of apprehending criminals as rapidly as possible, thus eliminating continued criminal acts, as a factor outweighing the undesirable consequences of holding an officer liable for the damages sustained by a third party as a result of negligence such as described in the complaint.

"*We are not prepared to hold an officer liable for damages inflicted by the driver of a stolen vehicle whom he was lawfully attempting to apprehend for the fortuitous reason only that the criminal drove through an urban area. To do so would open the door for every desperado to seek sanctuary in the congested confines of our municipalities, serene in the knowledge that an officer would not likely give chase for fear of being liable for the pursued's recklessness. Such is not now the law nor should it be the law.*" 263 F. Supp. at 90-91. (Emphasis supplied.)

The general rule relative to the liability of municipalities in such circumstances was stated in 57 Am. Jur. 2d, Municipal, School, and State Tort Liability § 263, p. 226.

"Assuming that there is no governmental immunity from tort liability, a municipality responsible for the conduct of a police officer is nevertheless not liable for personal injuries, death, or property damage inflicted by a vehicle being pursued by a police vehicle where the police vehicle is only involved to the extent that it was being driven in pursuit of the fleeing vehicle which actually cause[d] the injury or damage complained of."

The privileges and immunities of the officer and municipality have not been upheld where the officer failed to operate warning lights and siren. See *Sparks v. City of Compton,* 64 Cal. App. 3d 592, 134 Cal. Rptr. 684 (1976); and *Thain v. City of New York,* 35 App. Div. 2d 545, 313 N.Y.S.2d 484 (1970), *aff'd* 30 N.Y.2d 524 (1972). A good summary of the case law in this area is set forth at Annot., Liability of Governmental Unit or its Officers for Injury to Innocent Occupant of Moving Vehicle, or for Damage to such Vehicle, as Result of Police Chase, 4 A.L.R.4th 865.

A common theme in the cases denying liability where a fleeing violator's vehicle causes the injury or death is the officer in

attempting to arrest is doing his duty and is not the insurer of the violator. In *Hendrix v. City of Topeka,* 231 Kan. 113, 643 P.2d 129 (1982), a case arising under differing circumstances, we noted:

"A police officer is not an insurer against all harm for the people with whom he has official contact." 231 Kan. at 123.

Officer Shore was operating his emergency vehicle in complete compliance with the requirements of K.S.A. 8-1506 and is entitled to all privileges and immunities granted to him by the statute. To extend the "due care" requirement to the *decision* to chase or to continue the chase and hence make the officer the insurer of the law violator would emasculate the privileges and immunities afforded by the statute and thwart the public policy purpose of the statute.

The 1982 amendments to the driving under the influence statute (K.S.A. 8-1567) and statute governing evidence to be admitted in such prosecutions (K.S.A. 8-1005) were the direct result of public concern over the terrible trail of carnage caused by intoxicated drivers. Clearly it is strong public policy to remove drunken drivers from Kansas roads. It would be directly contrary to this policy to hamstring the efforts of law enforcement officers to apprehend these persons.

We conclude the "due care" requirement of K.S.A. 8-1506(*d*) applies only to the police officer's physical operation of his own vehicle and not to the *decision* to chase or *continue to chase* a law violator. If the officer is in compliance with the statute in the operation of his own vehicle, he is entitled to the privileges and immunities afforded by the statute and is not vicariously liable or responsible for the reckless or negligent acts of the law violator he is pursuing. The officer is not the insurer of the fleeing law violator. The officer in such circumstances has breached no duty owed to persons injured by the fleeing violator's own negligence or wanton conduct and, accordingly, as a matter of law the officer has not committed a tort upon such injured persons. There being no tort, as a matter of law, reference to the Tort Claims Act (K.S.A. 1982 Supp. 75-6101 *et seq.*) is rendered unnecessary.

In the case before us, under the uncontroverted facts, Officer Shore was operating his authorized emergency vehicle in full compliance with the requirements of K.S.A. 8-1506 and is entitled to the privileges and immunities granted by the statute. As

a matter of law the defendant officer, whose only involvement in the tragic accident was pursuit of the law violator, breached no duty owed to plaintiffs' decedents. Hence, summary judgment was properly entered in his favor, although we disagree with the district court's rationale applying the discretionary function or duty exception (K.S.A. 1982 Supp. 75-6104[*d*]) of the Kansas Tort Claims Act.

The judgments are affirmed.

HERD, J., dissenting: I disagree with the majority. As indicated in *Thornton v. Shore*, 232 Kan. 394, 654 P.2d 475 (1982), I would reverse the trial court.

As the majority correctly notes, this case is governed by K.S.A. 8-1506. That statute gives the driver of an "authorized emergency vehicle" certain privileges when "in the pursuit of an actual or suspected violator of the law." These privileges include running red lights or stop signs, exceeding the speed limit, and disregarding regulations governing direction of movement or turning in specified directions. Subsection (*c*) of the statute allows the privileges only when the vehicle is "making use of an audible signal" and "visual signals." Subsection (*d*), in turn, states:

"The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others."

Thus, the privileges provided in K.S.A. 8-1506 are limited. To avail oneself of the privileges a driver of an authorized emergency vehicle must give warning with flashing lights and siren. Even with the warnings, however, the driver must operate the vehicle with due regard for the safety of all persons. The majority holds whenever a high speed chase results in a collision between the person pursued and a third party, the pursuing officer has, as a matter of law, met the "due regard" standard of K.S.A. 8-1506(*d*) by merely turning on the warning signals. I disagree. Due regard and due care are questions of fact and should remain so. There are numerous scenarios where an accident is caused by one not a party to the collision. It is a question of causation.

There is a fundamental flaw in the majority opinion. It states, "The uncontroverted facts must be set forth in detail." What follows is not "detail" but a general outline of the facts. The lack

of factual detail is caused by the limited nature of the record. The record in this case consists of appellant Thornton's interrogatories to appellee Shore, a "reconstruction" of the accident prepared for the appellant by Thomas E. Mulinazzi, P.E., and fifty pages of testimony from the preliminary hearing of Donald Bender. The facts were not fully developed, permitting this matter to come here from an entry of summary judgment in favor of Officer Shore. As such, I remind the court in considering a motion for summary judgment, the party against whom the motion is directed is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center,* 229 Kan. 330, 341-42, 624 P.2d 971 (1981).

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Panhandle Agri-Service, Inc. v. Becker,* 231 Kan. 291, 295, 644 P.2d 413 (1982).

"Ordinarily a motion for summary judgment should not be sustained so long as pretrial discovery remains incomplete." *Citizens State Bank v. Gilmore,* 226 Kan. 662, 664, 603 P.2d 605 (1979). It is only when there is no *genuine* issue as to any *material* fact that the granting of summary judgment may be proper even though discovery is incomplete. *Temmen v. Kent-Brown Chevrolet Co.,* 217 Kan. 223, 229, 535 P.2d 873 (1975).

The central issue in this case is whether Officer Shore operated his vehicle with due regard for the safety of all persons. As the majority notes, the driver of an authorized emergency vehicle meets this standard when, under the facts and circumstances of the case (which include the privileges and immunities outlined in K.S.A. 8-1506), he acts as a "reasonably careful driver." *Shawnee Township Fire District v. Morgan,* 221 Kan. 271, 279, 559 P.2d 1141 (1977). The majority has answered that question in the case at bar as a matter of law.

Whether the acts of a person meet the standard of due care under the circumstances is a question of fact. In a case such as this it is the trial court's duty to present the jury with the yardstick by which to measure the officer's conduct. It is then the function of the jury to determine whether the officer's conduct meets that standard. See 57 Am. Jur. 2d, Negligence § 75, p. 426.

In *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981), the Nebraska Supreme Court recognized the nature of the question involved in these types of cases. There the decedent was killed when the automobile he was driving was struck by a van which was being pursued at high speeds by officers of the Omaha Police Department. Suit was later filed against the City of Omaha and the officers involved. After a trial to the court the officers were found not guilty of negligence. After analysis of a Nebraska statute similar to K.S.A. 8-1506, the Supreme Court affirmed. In doing so, however, the court noted: "A police officer pursuing a traffic violator is required to observe the care which a reasonably prudent man would exercise in the discharge of official duties of a like nature under like circumstances." 209 Neb. 345, Syl. ¶ 4. *Hammon v. Pedigo*, 173 Neb. 787, 799, 115 N.W.2d 222 (1962). The question of whether this duty was breached, the court stated, is "to be decided by the finder of fact." 209 Neb. at 350.

As previously noted, summary judgment should not be granted so long as there remains a genuine issue of material fact. The question of whether Officer Shore breached his duty established under K.S.A. 8-1506(*d*) is obviously material. The determination of whether the issue is genuine, however, cannot be made until discovery is complete. Since high speed chases usually end in a collision it is important to determine if the infraction of the law was such a threat to the public to justify a chase. Could the lawbreaker have been apprehended by another technique, such as a roadblock? What is the proximity of the chase route to heavy traffic or congested areas? What is the width of the streets through which Bender was pursued? Were there cars parked along those streets? What was the visibility at each intersection? What is the terrain on the chase route? Would a reasonably prudent officer have handled the situation the same way? Can we say conducting a 70 mile-per-hour chase through the heart of a city to apprehend a minor traffic offender is giving due regard for the safety of others? These are only a few of the relevant questions left unanswered by the meager record. These questions cannot be resolved by looking only at Officer Shore's testimony from Bender's preliminary hearing. This is not a proper case for summary judgment.

The effect of the majority's holding will be that anytime a high

speed chase precipitates a collision in which the pursuing officer does not actually collide, the officer is immune from liability. The majority ignores the conduct of the pursuing officer (which, after all, is the focus of K.S.A. 8-1506[d]), to lay down a blanket rule. I have no doubt the pursuing officer in most collisions from a high speed chase has met the due regard standard of care set by the legislature. But the rule set by the majority overlooks those occasions when the pursuing officer breaches his statutory duty and causes an accident. This rule amounts to a major invasion of the province of the factfinder to determine causation and subverts an accepted method of dispute resolution which has served the public well.

Even though a police officer's job entails heavy burdens and pressures as a protector of the public, he should not be excused from using due care in furnishing that protection. Most officers exercise their duties with restraint and respect for the rights of others, but for the few who, under the stress of the job, are not careful standards are needed. K.S.A. 8-1506($d$) is the precautionary standard set by the legislature. In his famous dissent to *Olmstead v. United States,* 277 U.S. 438, 479, 72 L.Ed. 944, 48 S.Ct. 564 (1928), Justice Brandeis explained the reasons for such precautions:

"Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding."

I would reverse the trial court and remand the case for trial.

HOLMES, J., dissenting: I join in the dissent of Herd, J. and add the following comment. Syllabus 6 of the majority opinion holds:

"The privileges granted by K.S.A. 8-1506 do not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons and does not protect the driver from the consequences of reckless disregard for the safety of others (K.S.A. 8-1506[d])."

I agree with that statement of the law but unfortunately, in my opinion, the majority has not followed it. Obviously, it is a question of fact whether Officer Shore operated his emergency vehicle "with due regard for the safety of all persons" or in "reckless disregard for the safety of others" and the facts relating

to the officer's actions and duty should be determined by the jury and not on a motion for summary judgment based upon minimal discovery.