793 So.2d 1063 (2001)
Robert KNOWLES, Sheriff of St. Lucie County Sheriff's Department, Appellant/Cross-Appellee,
v.
Ann HENNELLY and William Hennelly, Appellees/Cross-Appellants.
No. 4D00-2133.
District Court of Appeal of Florida, Fourth District.
August 1, 2001.
Rehearing Denied September 26, 2001.
*1064 Bruce W. Jolly and Alexis M. Yarbrough of Purdy, Jolly & Giuffreda, P.A., Fort Lauderdale, for appellant/cross-appellee.
Grossman Roth & Partridge, Sarasota, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellees/cross-appellants.
STONE, J.
We affirm a final judgment entered against Sheriff Robert Knowles for damages sustained when the car occupied by Ann and William Hennelly was struck by a vehicle being pursued by a sheriffs deputy.
The testimony established that on a clear, dry, and sunny Saturday morning, sheriffs deputies set up a radar check on a stretch of Old Dixie Highway. A car driven by James Parker was clocked at 58 miles per hour in a 35 mile per hour zone. One of the deputies motioned to the driver to pull over, and the driver began to comply, but before stopping, he took off heading south on Dixie. Deputy Evans pursued the speeder. After going 1.4 miles, Parker's car ran a red light and collided with the vehicle occupied by the Hennellys.
Initially, Evans did not turn on his siren or lights despite the police department policy that requires him to do so in the event of a pursuit. Evans was able to note the offender's license tag and memorize it. Another of the deputies on the scene got a fairly good look at the driver of the fleeing car, but stated that it would have been difficult to recognize him a week later.
The area of the chase consisted of a residential area, a town hall, a village area, and the intersection. Evans stated that during the chase, he passed no other cars either going in the same or the opposite direction, nor did he pass any pedestrians or animals. He had no near collisions with any other vehicles, people, or objects.
While the testimony as to Evans' speed was the subject of much dispute, Hennelly's expert, Chinry Baughman, testified that Deputy Evans' speed during the chase exceeded 80 miles per hour and probably reached 100 miles per hour along the way. Baughman further stated that at speeds in *1065 excess of 80 miles per hour, it is difficult to control one's vehicle.
On appeal, the sheriff challenges the trial court's denial of his motions for directed verdict and new trial, urging that the facts were insufficient to allow the jury to determine whether the pursuit was conducted in a negligent manner.
Initially, we observe that a motion for directed verdict should only be granted where, viewed in the light most favorable to the non-moving party, "there is no evidence upon which a jury could properly rely in finding for the plaintiff." Stokes v. Ruttger, 610 So.2d 711, 713 (Fla. 4th DCA 1992) (citations omitted).
The seminal case on actionable negligence occurring in the course of this type of police pursuit is City of Miami v. Horne, 198 So.2d 10 (Fla.1967). There, the supreme court held that where a police pursuit results in a collision between the subject of the chase and a third party, the policy agency cannot be held liable merely because of its decision to pursue the suspect. Id. However, the police agency may be held responsible if the pursuit is conducted in a negligent manner. Id. As stated by the court:
We think the rule is that the officer should take such steps as may be necessary to apprehend the offender but, in doing so, not exceed proper and rational bounds nor act in a negligent, careless or wanton manner.
Id. at 13; see also Reed v. City of Winter Park, 253 So.2d 475 (Fla. 4th DCA 1971); Porter v. State, Dep't of Agric. and Consumer Servs., 689 So.2d 1152 (Fla. 1st DCA 1997).
Subsequent to Horne, the supreme court again had the occasion to address tort liability in the area of police pursuit in City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992). In that case, the trial court dismissed a complaint which had alleged that the high speed pursuit of a traffic violator involved at least fourteen and possibly as many as twenty police vehicles, traveling at speeds varying from 80 to 120 miles per hour, extended twenty-five miles in densely populated areas, and passed through thirty-four separate traffic signals, many of which were ignored by the "caravan." Furthermore, at some point, the sheriff ordered the pursuit to cease, but the instruction was ignored. Eventually, the subject of the pursuit collided with another car and killed its occupants.
The Brown court recognized the general proposition that police decisions to engage in pursuit are entitled to a high degree of judicial deference, but explained its finding that the pursuit was operational, and therefore not immune[1], in terms of the relative emergency giving rise to the pursuit and the method of conducting the pursuit, stating
[I]n the absence of such an emergency, the method chosen for engaging in hot pursuit will remain an operational function that is not immune from liability if accomplished in a manner contrary to reason and public safety.
Id. at 1227 (emphasis supplied). The court termed the pursuit "an enormous overreaction" by the police and questioned whether other more reasonable methods were not available to apprehend a traffic light violator, such as taking down the license tag number and description of the driver and locating him through less dangerous means. See id. Finally, the court stated:
Deference will be shown to the reasonable decisions of law officers to maintain *1066 pursuit of certain offenders who are reasonably thought to be violent or to pose a danger to the public at large. What is required is for police to use reasonable means in light of the nature of the offense and threats to safety involved. For example, a high-speed chase is likely to be justifiable if its object is a gang of armed and violent felons who probably will harm others. As we have stated elsewhere, deference will be shown to police conduct when officers must choose between two different risks that both will adversely affect public safety.
Brown, 604 So.2d at 1227-28.
In this case, as in Brown, the chase was instituted over a relatively benign offense, a speed limit violation. Hennelly further established that the police were able to note Parker's license tag number and his description. Here, in contrast to the facts in Brown, the pursuit was conducted by only one police car over a relatively short distance. The sheriff argues that these facts support its argument of the lack of proof to show negligent pursuit. However, viewed in the light most favorable to the plaintiffs, the police car pursued a traffic violator through a mixed residential and commercial area at speeds nearing 100 miles per hour making vehicle control difficult. Furthermore, the testimony established that Evans failed to immediately engage his lights and siren to warn others of the chase. See Reed, 253 So.2d at 477 (question of whether failure to continuously engage siren caused collision between pursued vehicle and third party was one for jury).
While the facts in Brown are certainly more egregious than in this case, enough evidence was before the jury to warrant its deciding whether the manner of conducting the pursuit was negligent under both Horne and Brown. Cf. Creamer v. Sampson, 700 So.2d 711 (Fla. 2d DCA 1997)(held: dismissal improper as negligence complaint alleging police pursuit of traffic violator at speeds exceeding 80 miles per hour on heavily traveled streets raised factual question). Accordingly, the trial judge properly denied the sheriffs motions for directed verdict and new trial.
As we have affirmed on the sheriffs appeal, we need not reach the issue raised on cross-appeal.
POLEN, C.J. and GROSS, J., concur.
NOTES
[1] See generally Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).