REBECCA KIRSHENBAUM, Adm'rx of the Estate of Harry Kirshenbaum, Deceased, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 61110

Opinion filed October 21, 1976.

530

William R. Quinlan, Corporation Counsel, of Chicago (Richard Friedman, Daniel Pascale, and Ann Acker, Assistant Corporation Counsel, of counsel), for appellants.

Allen S. Gerrard, of Gerrard and Gerrard, of Chicago, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

At 6:30 in the morning, a Chicago police officer named Keith DeRobertis saw a speeding automobile going west on Granville Avenue, a Chicago stop street. He followed the auto in his patrol car for some 11 blocks at a speed of 40 miles an hour in a residential area where the speed limit was 30 miles an hour. At Rockwell, a north and south street, he crashed into a southbound auto which had stopped at Granville before proceeding into the intersection. Harry Kirshenbaum, the driver of the southbound auto, was killed and his two passengers, Ludwig Kogut and Maximilian Musielak, were injured.

Kirshenbaum's widow, the administratrix of his estate, and the two passengers sued the City of Chicago and DeRobertis. The defendants were charged in an amended complaint with willfully and wantonly operating the patrol car without keeping a sufficient lookout for other vehicles, with operating it at an unreasonable speed under existing traffic conditions and with driving it into an intersection without sounding a warning to other vehicles.

This case comes to our court with an unusual procedural background. It was tried before a judge who found for the defendants. The plaintiffs moved for a new trial and the judge granted their motion. The defendants

sought leave to appeal from the order granting a new trial, but their request was denied. (App. Ct. Order #58926, February 14, 1976.) The case was then assigned to the judge from whom this appeal is taken. The parties stipulated that the case would be submitted to the second judge on the record made in the first trial. No witnesses were called and no new evidence was adduced. The second judge held for the plaintiffs. He found the defendants guilty of willful and wanton negligence and entered judgments of $65,000 for the administratrix, $8,250 for Kogut and $3,000 for Musielak.

■■ In their appeal the defendants make the novel contention that because the first judge was the only one who heard the witnesses testify, the second judge was bound by his finding and that it should prevail in this court. There is no presumption, under the procedural pattern followed in this case, that the first judge was correct in finding for the defendants and certainly none that his finding bound the second judge or binds this court in the re-evaluation of the evidence. In granting the plaintiffs' motion for a new trial, the first judge did not specify his reason for doing so. The plaintiffs presented eight grounds in support of their motion; five of them dealt with the weight of the evidence and three with trial errors. For all we know, the new trial may have been granted because the judge felt he had erred in weighing the evidence.

In any event, the second trial was a new trial and the second judge was free to make whatever decision he thought proper. But since he did not hear or see the witnesses, he was in no better position to pass on the evidence than is this court; so we may also after examining the record make an independent finding concerning the facts. *Inter-Insurance Exchange v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518.

At the coroner's inquest into the cause of Kirshenbaum's death, Officer DeRobertis testified that he was about 200 feet behind the auto he was pursuing on Granville at all times and traveling at the same speed—40 miles per hour in a 30-mile-per-hour zone. He said he never used his siren and only gave some "short raps" on his horn as he approached the Rockwell intersection. He said, however, that he had turned on the car's blue "mars" light and spotlight before reaching Rockwell. He said that nothing obstructed his view of the Rockwell intersection except cars parked bumper-to-bumper on the north side of Granville east of Rockwell and that he saw the Kirshenbaum auto pull away from the stop sign at Granville a split second before he crashed into it. He said he had taken his foot off the gas pedal and was about to put on the brake when the collision occurred; that because he had taken his foot off the gas pedal the back pressure of the engine slowed his car down before the impact.

His testimony changed considerably at the trial. DeRobertis now said

that he began tapping his horn three blocks east of Rockwell, that his speed had decreased substantially to 30 miles an hour or below, that he looked north at Rockwell but did not see anything, and that his car was struck by Kirshenbaum's auto.

On cross-examination he stated that the sun was up and admitted that Kirshenbaum would have looked into the sun if he had been looking to the east—the direction DeRobertis was coming from. He also stated that when a speeding vehicle is chased the mars light must be turned on, but that it is not necessary to sound the siren when stopping a traffic violator.

Outside of Kogut, who woke up in a hospital and did not know how the accident occurred, and Musielak, who testified that the Kirshenbaum auto stopped before starting across Granville and that a police car ran into it, the only eyewitness was DeRobertis, himself. However, a few nearby residents saw the two vehicles right after the crash. All who testified on the subject said they heard no horn prior to the collision. They disagree whether the blue light on top of the patrol car was operating and gave contradictory reports as to whether DeRobertis remained inside the car or left it.

One witness, a school teacher, ran to a window as soon as she heard the crash. The patrol car was west of Rockwell on the south side of Granville. She saw a policeman get out of the car, walk over to the auto that was smashed, look into it and return to the police car. Seconds later, she saw the mars light, which had not been on before, go on.

Section 12—601(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 12—601(b)) states that:

"* * * Any authorized emergency vehicle * * * may be equipped with a siren * * * but such siren * * * shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law in either of which events the driver of such vehicle shall sound such siren * * * when necessary to warn pedestrians and other drivers of the approach thereof."

The parties agree that the issue in this litigation is whether section 12—601(b) required DeRobertis to sound his siren and, if so, whether his failure to do so constituted willful and wanton negligence.

The purpose of section 12—601(b) was stated in *Sundin v. Hughes* (1969), 107 Ill. App. 2d 195, 246 N.E.2d 100, where it was held that it was the duty of a police officer to warn by siren not only of the approach of his car, but of the approach of the speeding vehicle he is pursuing: "The purpose of the warning statute is obviously to warn anyone in the immediate vicinity that a danger was present, and alert them in order that they might take steps to preserve their own safety." The defendants reason that, since DeRobertis was on a main thoroughfare and never in

excess of the speed limit by more than 10 miles an hour, he was not required to use his siren because it was reasonable for him to assume that it was unnecessary to warn other drivers. Granville is a residential street flanked by single-family dwellings, townhouses and apartment buildings near its intersection with Rockwell. There are alleys, driveways and parking places in the area. DeRobertis admitted that cars were parked along the northern side of Granville just east of Rockwell which would partially or totally block the view of the driver moving south on Rockwell. He further admitted that the bright early morning sun would be shining in the eyes of drivers looking in an easterly direction. His statement at the trial that he was going 30 miles per hour or less when he hit Kirshenbaum's auto was impeached by his earlier admission, at the coroner's inquest, that he was driving 40 miles per hour in pursuit of the speeding vehicle. In these circumstances, there was sufficient evidence before the second trial court for it to conclude that DeRobertis should have foreseen that the use of his siren would be necessary to warn pedestrians and motorists of his approach.

■■■ Related to the issue of whether section 12—601(b) compelled DeRobertis to sound his siren is the question of whether his failure to do so amounted to willful and wanton negligence. An act or omission to act is willful and wanton when a motorist proceeds under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of immediate danger, to exercise ordinary care to prevent it. (*Breslin v. Bates* (1973), 14 Ill. App. 3d 941, 303 N.E.2d 807.) The defendants maintain that, since DeRobertis and the vehicle he was following were driving on a preferential street, he had an absolute right-of-way and could assume that drivers on side streets would yield to him. They claim, therefore, that he could reasonably conclude that it was unnecessary to use his siren. The pertinent rule is stated in *Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628, 630:

> "While a driver on a preferential highway generally has the right-of-way over drivers on non-preferential roadways, he does not per se have the absolute or unqualified privilege to assert it regardless of the circumstances, distance or speed. The rule prescribing the standard of care for a driver on a preferential highway has been set forth many times. He may not proceed heedlessly into obvious danger. He has a duty to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered."

After reviewing the record, we have concluded that not only could the second trial court have reasonably found that DeRobertis failed to exercise due care, but also, as it did, that he was wantonly and willfully

negligent in not sounding his siren when, with the sun low in the sky directly back of him, he approached the residential intersection of Granville and Rockwell at an excessive speed.

■■ ■ The defendants argue that if Kirshenbaum entered the intersection while momentarily blinded by the sun, this would constitute contributory negligence on his part which would bar recovery. Yet ordinary negligence is no defense to willful and wanton negligence. (See *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; Prosser, Torts 426 (4th ed. 1971); *Kellerman v. J. S. Durig* (1964), 176 Ohio St. 320, 199 N.E.2d 562.) The defendants further argue that DeRobertis was not the proximate cause of the accident because, they say, the accident still would have occurred even had he been driving 30 miles an hour or less. *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 263 N.E.2d 593, is cited to support this claim. In *Hale* a defendant-driver was held liable for injuries and other damages where her automobile, proceeding from a blacktop side road onto a concrete highway, collided with a car which may have been exceeding the speed limit, and where the defendant failed to see this car approaching or to take into account the obstruction to view created by two parked cars. The reviewing court reasoned that the accident would have occurred even if the plaintiffs had been going the legal speed limit since the "defendant drove her automobile directly into the path of the plaintiffs' vehicle under circumstances that afforded plaintiffs no opportunity to avoid the collision." The vital difference between the *Hale* case and the present one is that there the approaching car was a private passenger vehicle and not a patrol car whose driver was required by statute to sound his siren to warn pedestrians and motorists of impending danger. Had Officer DeRobertis met this statutory obligation it is reasonable to assume that the collision killing Kirshenbaum and injuring two others would never have occurred. The judgment is affirmed.

Affirmed.

MEJDA, P. J., and McNAMARA, J., concur.