(No. 79-CC-0454-)

WILLIAM JAGER *et al.*, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 30, 1986.*

*Order on denial of petition for rehearing filed September 8, 1986.*

EDWARD R. VRDOLYAK, LTD. (BRUCE M. BOZICH, of counsel), for Claimants.

NEIL F. HARTIGAN, Attorney General (MARY A. MULHERN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Montana, C.J.

This is a claim for damages suffered as a result of a collision between a vehicle driven by William Jager and an Illinois State Police automobile operated by an Illinois State Trooper on the evening of April 24, 1977, at the intersection of Cedar Road and Francis Road in New Lennox, Illinois.

Hearings have been held for this claim, all parties have filed their briefs, and the commissioner has duly filed his report. The matter now comes before the Court for a decision.

The evidence shows that Cedar Road is a two-lane, two-way north-south street and Francis Road is a two-lane, two-way east-west street. The intersection is controlled by four-way stop signs. Claimant William Jager was driving a van owned by Charles Jager in a northerly direction upon Cedar Road. Claimants Maureen Jager, Pamela Morrison-Zakhar, Roger Rodeck and Theresa Settles were passengers in the Jager van. As the Jager vehicle came to a stop at the stop sign, a pickup truck operated by Jean Ann Timm entered the intersection eastbound on Francis Road, having previously stopped for the stop sign for eastbound traffic at that intersection. At the same time, an Illinois State Police squad car, driven by Trooper Richard Nichols was entering the intersection in a southerly direction on Cedar Road. The police car collided with the pickup truck in the intersection and then struck the Jager van and stopped just south of the intersection.

The issue presented for consideration is whether the State trooper was guilty of negligence which proximately caused the accident and the resulting injuries to Claimants.

Four witnesses testified as to the actions of Trooper Nichols at the time of the occurrence.

Trooper Nichols testified that just prior to the occurrence, while driving his vehicle southbound on Cedar Road, he received a radio call of an officer needing assistance when he was approximately three-fourths of a mile to a mile north of the intersection. He stated he activated his vehicle's red flashing lights upon hearing the call and proceeded toward the intersection at 30 to 35 miles per hour. He was unable to estimate how much time elapsed from activation of the lights until the first impact. He never turned on the siren prior to the accident nor did he ever sound the horn. He braked before entering the intersection at about 20 miles per hour, not stopping at the stop sign since he saw all the vehicles at the intersection including a Cadillac stopped westbound on Francis Road and all the vehicles seemed to him to be yielding to him. As he was three-fourths of the way through the intersection he observed the pickup truck entering the intersection. He collided with the pickup truck and then veered to his left striking the stopped van. His vehicle finally stopped 70 feet south of the intersection. He admitted never applying his brakes just prior to the collision with the pickup truck.

William Jager testified that he was approximately 20 car lengths south of the intersection when he saw the police vehicle approximately the same distance north of the intersection. He estimated the speed of the police vehicle to have been at least 55 miles per hour and stated that it had not activated its flashing red lights. The

flashing lights were activated when the police car was about 50 feet from the intersection but, by that time, the pickup truck had already entered the intersection. The police car never reduced speed prior to entering the intersection and collided with the pickup truck, veered into the northbound lanes of Cedar Road, collided head-on with the van, pushing the van backwards two car lengths and then careened off about 150 feet further south, striking a telephone pole.

Eyewitness Gary Gossett testified that he was operating a vehicle northbound 30 to 40 feet directly behind the Jager van just before the collision. He stated that prior to entering the intersection the police car only had headlights on, that upon entering the intersection its flashing lights were activated no more than one or two seconds prior to the impact between the pickup truck and the police car, and that the police car was traveling about 35 miles per hour, never slowing down before impact.

Finally, Jean Ann Timm, the driver of the pickup truck, testified that she first saw the police vehicle when it was approximately one quarter mile north of the intersection and that it had no flashing lights on at that time. After she stopped at the intersection she saw a flash of red light and was simultaneously jolted by impact with the police car. She said the police car ended up resting against a telephone pole 70 to 80 feet south of the intersection.

In the opinion of the Court it has been proven, by a preponderance of the evidence, that Trooper Nichols was negligent in the operation of his vehicle. He, admittedly, failed to activate his siren or horn prior to entering the intersection at which he observed three vehicles. He failed to stop at the stop sign. We are

persuaded, from the force of the impact with Claimants' vehicle and the fact that he ended up colliding with a telephone pole 70 feet south of the intersection after two impacts, that his speed was in excess of his estimate of 20 miles per hour and was in excess of that which was reasonable considering the circumstances. Additionally, according to two witnesses who are not parties to this action, he failed to activate his flashing red lights until seconds before the first impact, too late to provide warning to the pickup truck entering the intersection. Since, by all accounts, the Jager van was at a stop at the stop sign at the time of the impact, there can be no question of any contributory negligence on the part of its driver, William Jager.

As to the injuries suffered, the evidence was undisputed. Claimant Maureen Jager, immediately after the accident was bleeding from her right eyelid and her right ankle was swollen and painful. She was transported by ambulance to Silver Cross Hospital where her eyelid was sutured by Dr. Tsai. She was obliged to use crutches to accommodate the soft tissue injury to her ankle for three weeks. She saw Dr. Moll of Frankfort Clinic three times and saw Dr. Tsai for a second time for the removal of the sutures. Her complaints at the time of the hearing were occasional ankle pain and drooping of her right eyelid and scarring from the sutures. Her medical special damages amount to $431.00. We find that she is entitled to an award of $3,500.00.

William Jager was knocked out of the driver's seat of his van from the force of the impact. He was knocked unconscious and was revived at the Silver Cross Hospital. He suffered a laceration of the head which was sutured. He suffered headaches for one week and lost two days of work, amounting to $80.00. His medical

special damages amounted to $237.00. We find that he is entitled to an award of $1,000.00.

Claimant Pamela Morrison-Zakhar was seated on the floor of the van at the time of the impact. As a result of the impact she was propelled forward to the front of the van where she struck her face and knees against various objects. She was taken by ambulance to Silver Cross Hospital where her upper lip was sutured. She was referred to Dr. Svalina, an oral surgeon, who testified that she had the following damage: left incisor was completely avulsed and missing; a fractured crown of the right central incisor, a fractured crown of the left lateral incisor; avulsions out of the socket of teeth Nos. 10-12; and a fractured root of tooth No. 12, the left first premolar. Treatment consisted of placement of a wire fixation device around the damaged and adjacent teeth. Recently, she has had continuing problems including the fact that the end root of her upper left cuspid tooth has begun to protrude through the wall of the bone which may reflect a rejection process of the tooth.

Dr. Kosel, her regular dentist, fashioned and installed a temporary and then a permanent bridge in her mouth, which in her lifetime might need to be replaced four to six times because of normal wear and tear. In March of 1982 she was treated by Dr. Garber, a dentist who replaced the bridge installed by Dr. Kosel because of receding of the gums.

Approximately one year after the accident Claimant Morrison-Zakhar was operated on by Dr. Gotsis, a plastic surgeon who recut her lip as a result of lesions from her lacerations. She has suffered swelling and pain in both of her knees requiring X rays and temporary restriction of activities. Kneeling or standing for long periods of time still hurts her knees. Her medical and

dental bills thus far are $4,944.00. Expected bridge replacements were estimated at $14,400.00. We find that she is entitled to an award of $30,000.00.

As to Claimants Roger Rodeck, Theresa Settles and Charles Jager, no evidence was presented on their behalf and we find, therefore, that their claims must be denied.

Wherefore, it is hereby ordered that awards be granted in this case to the following persons in the following amounts:

(a) $3,500.00 to Maureen Jager

(b) $1,000.00 to Willlam Jager

(c) $30,000.00 to Pamela Morrison-Zakhar

It is further ordered that the claims of Roger Rodeck, Theresa Settles, and Charles Jager, be denied.