(No. 90-CC-3070-

SHARON M. KOEPP and BOBBY G. KOLLER, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 29, 1993.*

HAMM & HANNA (RONALD HANNA, of counsel), for Claimants.

ROLAND W. BURRIS, Attorney General (THOMAS S. GRAY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

The Claimants, Sharon M. Koepp and Bobby G. Koller, filed this claim in the Court of Claims seeking damages from the Respondent for injuries they received when an Illinois State trooper drove into their vehicle while the State trooper was responding to a call. The case was tried before Commissioner Richard Parsons.

### The Facts

This is an action against the State of Illinois for monetary damages for personal injury brought by Claimants, Sharon M. Koepp and Bobby G. Koller, for injuries they received in an automobile collision that occurred on March 4, 1990, on Illinois Route 88 near the intersection of Akron Road just north of Peoria, Illinois. The Claimant's vehicle was struck from behind by a State motor vehicle being operated by Illinois State trooper Meuser.

At the time of the occurrence, Claimants were traveling northbound on Route 88 near its intersection with Akron Road. Claimant, Bobby G. Koller, the driver, intended to make a left-hand turn onto Akron Road. He prepared for the left turn by turning on the left-turn signal and starting to slow down as he approached the intersection when he was struck by the State of Illinois squad car. The evidence establishes that the left-turn signal of the Koller vehicle was activated.

Illinois State trooper John Meuser was responding to a call concerning a fight at a dance club in Edelstein, Illinois, north of Peoria on Route 88. There was only one deputy handling the call so the trooper was in a hurry to respond. The trooper proceeded northbound on Route 88. The trooper testified he occasionally used his siren. Trooper Meuser also testified that he turned on his wig wag grill and back window lights.

Just prior to colliding with the Claimant's vehicle, trooper Meuser passed another vehicle which was driven by Gary Lewis. After passing the Lewis vehicle, trooper Meuser continued on north and as he attempted to pass Claimant's vehicle as it approached the Akron Road intersection, he collided with Claimant's vehicle. Gary Lewis and the occupants of his vehicle were independent and very credible witnesses who observed the squad car as it came up behind their car, passed their car, and then went down the road and collided with Claimant's vehicle. Mr. Lewis was only aware of the squad car's approach because he saw a vehicle in his rearview mirror coming up behind him traveling extremely fast. He thought the trooper was going 90 miles per hour. Witness Robert Dawson was not aware of the squad car's approach until it whipped past them with the back lights flashing. Mrs. Sandra Lewis saw flashing white lights in the squad car's grill as the squad

car came up to their car. The squad car came up very fast and he almost hit the side of their car, according to Mrs. Lewis. The squad car then went past and swerved back in to the right-hand lane.

The established facts are that the squad car did not have Mars lights on the top of the car and it is clear that trooper Meuser was not using his siren at or near the time of the collision. The trooper was also traveling considerably faster than the speed limit. Trooper Meuser testified that his warning lights on the front grill and in the back window were in operation. The lights in the back window were more difficult to see from the front because there is a shield between them and the driver to protect the driver's vision. The trooper also was of the opinion that the siren was inadequate to warn motorists who are in front of the squad car. However, he did acknowledge that he is required to use the siren when he is in pursuit of a vehicle. The trooper felt it would have been more difficult for him to hear his radio if he used the siren.

In the collision, Sharon Koepp was thrown from the front seat and was trapped in the back seat unable to move. She was in considerable pain. She received care and treatment from Dr. Jongerius and Dr. Hoffman. She received physical therapy at the Institute of Physical Medicine and Rehabilitation for a period of seven weeks and had to have help with her daily activities for several weeks. She suffered pain in her neck and back which continues. Her medical expenses were $3,207.21 and related to this soft tissue injury.

Bobby G. Koller's medical expenses were $363.56. His lost wages were $731.12. He continues to take over-the-counter pain medication for the aches and occasional sharp pain he still suffers.

## The Law

Claimants have the burden of proving, by a preponderance of the evidence, that the Respondent was negligent and that the State's negligence was the proximate cause of the Claimants' injuries. *Bauman v. State* (1981), 34 Ill. Ct. Cl. 140; *Phillips v. State* (1991), 44 Ill. Ct. Cl. 89; *Mathews v. State* (1992), 44 Ill. Ct. Cl. 291.

The Court will also consider comparative negligence of the Claimant in adopting an award. *Alvis v. Ribar* (1981), 85 Ill. 2d 1; *Guffey v. State* (1987), 40 Ill. Ct. Cl. 179.

The trooper's conduct in driving an emergency vehicle is to be measured against specific statutory standards. The statutory exception for emergency vehicles authorizes drivers of emergency vehicles to violate various rules of the road, but only to the extent such violations do not endanger other persons. *Bauman v. State, supra.*

Section 11—205 of the Illinois Vehicle Code (625 ILCS 5/11—205(b)) states the following relevant law:

"(b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

(c) The driver of an authorized emergency vehicle may:

⁎ ⁎ ⁎

(3) Exceed the maximum speed limits so long as he does not endanger life or property;

(4) Disregard regulations governing direction of movement or turning in specified directions.

(d) The exceptions herein granted to an authorized emergency vehicle, other than a police vehicle, shall apply only when the vehicle is making use of either an audible signal when in motion or visual signals meeting the requirements of Section 12—215 of this Act.

(e) The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

Section 11—907 of the Illinois Vehicle Code (625 ILCS 5/11—907), while requiring drivers to stop and pull to the right for approaching emergency vehicles, states in paragraph (b) that, "This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highways."

Section 12—601 of the Illinois Vehicle Code (625 ILCS 5/12—601) states:

"§12—601. Horns and warning devices.

o  o  o

(b) No vehicle shall be equipped with nor shall any person use upon a vehicle any siren, whistle, or bell, except as otherwise permitted in this sub-section. Any authorized emergency vehicle as defined in Chapter 1 of this Act may be equipped with a siren, whistle, or bell, capable of emitting sound audible under normal conditions from a distance of not less than 500 feet, but such siren, whistle or bell, shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law in either of which events the driver of such vehicle shall sound such siren, whistle or bell, when necessary to warn pedestrians and other drivers of the approach thereof."

Section 12—215(d) of the Illinois Vehicle Code (625 ILCS 5/12—215(d)) requires the oscillating, rotating or flashing lights to be of sufficient intensity to be visible at 500 feet in normal sunlight.

When measured against the statutory standards, it is clear from the evidence that the trooper failed to drive with due regard for the safety of persons on the highway. He drove at a recklessly high rate of speed almost striking the Lewis vehicle, he failed to use his siren when neces-sary to warn pedestrians and other drivers of his ap-proach, and the lights on his vehicle did not give enough warning as evidenced by the fact the Lewis vehicle wit-nesses did not see the squad car approaching until it was practically upon them.

Considering the fact that the trooper nearly collided

with the vehicle he passed and that he was traveling at a very high rate of speed in the immediate vicinity of an intersection, it was mandatory that the trooper use a siren complying with the requirements of the statute. Trooper Meuser should have foreseen that the use of his siren was necessary to warn motorists of his approach at the speed he was traveling. The Respondent was therefore negligent and it was this negligence that was the proximate cause of the two Claimants' injuries. An act or omission to act is willful and wanton when a motorist proceeds under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of immediate danger, to exercise ordinary care to prevent it. (*Breslin v. Bates* (1973), 14 Ill. App. 3d 941.) The evidence shows that the Claimant had his left-turn signal on. The evidence further shows that the collision occurred in the lane where Claimant was lawfully traveling. Whether the trooper was passing a vehicle he thought was going to pull over or was preparing to turn, he should have been sounding his siren and passing in the southbound lane.

We find that in addition to failure to exercise due care, the trooper acted willfully and wantonly in not sounding his siren and passing in the left lane at an intersection under these circumstances and particularly when the officer admits his warning lights are difficult to see from the front. *Kirshenbaum v. City of Chicago* (1976), 43 Ill. App. 3d 529; *Bauman v. State* (1981), 34 Ill. Ct. Cl. 140.

We also find that none of the actions of Claimant, Bobby G. Koller, proximately caused the collision to the extent required to apply any comparative negligence. (*Jager v. State* (1986), 39 Ill. Ct. Cl. 21.) The Claimant was given and evidently passed two field sobriety tests. There was no evidence of impairment and he was not charged with DUI. While Claimant was charged with driv-

ing while license suspended (for a financial responsibility suspension) and failure to wear a seat belt, the Claimants correctly point out that law violations are not, *per se*, negligence or contributory willful and wanton conduct. (*Beverly Bank v. Penn. Control Co.* (1974), 21 Ill. App. 3d 77.) There was no evidence offered that any of the alleged statutory violations was the proximate cause of the collision or injury. Furthermore, the failure of the Claimant to wear a seat belt cannot, by statute, be considered evidence of negligence nor can it be used to diminish any recovery for damages. 625 ILCS 5/12—601.1.

The Respondent has also raised the issues of sovereign immunity and public officials' immunity in bar of Claimant's claim. Ordinary negligence standards apply to operators of emergency vehicles. The duty owed to a motorist by a State trooper driving an emergency vehicle when dispatched to a disturbance is not a discretionary duty. (*Currie v. Lao* (1990), 198 Ill. App. 3d 625.) This cause is properly before the Illinois Court of Claims and is not barred by the public immunity doctrine.

Having found that the Respondent is liable to both Claimants, we turn to the issue of damages. Based on the testimony of Sharon Koepp concerning her injuries, pain and suffering and her medical expenses of $3,207.21, we find that she is entitled to an award of $18,500. Based on the testimony of Bobby G. Koller in regard to his injuries, pain and suffering, we find that he is entitled to an award of $3,000.

Therefore, it is ordered that Claimant, Sharon M. Koepp, is awarded the sum of $18,500 in full satisfaction of her claim and Claimant, Bobby G. Koller, is awarded the sum of $3,000 in full satisfaction of his claim.