126

BEVERLY VALLUZZI, Special Administrator of the Estate of GINA VALLUZZI, Deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 19, 1998.*
*Order on petition for rehearing filed May 14, 1999.*

NEVILLE, PAPPAS & MAHONEY (JOHN M. STEED, of counsel), for Claimant.

JIM RYAN, Attorney General (PAUL CHO, Assistant Attorney General, of counsel), for Respondent.

OPINION

SOMMER, C.J.

Claimant's decedent was gravely injured in a collision with a vehicle that was attempting to elude apprehension by the Illinois State Police. Claimant's decedent subsequently died as a result of medical complications related to her injuries. The issue presented appears to be one of first impression for this Court: whether, in conducting

their pursuit, the State police were the proximate cause of the accident and resulting death of Claimant's decedent.

The critical facts concerning the pursuit and eventual accident are undisputed. At approximately 10:30 p.m. on July 12, 1989, Trooper John Cornier was following a green Oldsmobile that was speeding on the Stevenson Expressway. The Oldsmobile was driven by one Anthony Demas. When the trooper activated his lights and siren to pull the Demas vehicle over, Mr. Demas refused to stop and, instead, accelerated in an attempt to elude apprehension. Demas reached speeds of up to 110 m.p.h. on the Stevenson and drove on the shoulder of the expressway in order to pass other traffic. In the course of this attempted escape, Demas began bearing down on another State police squad car that had previously stopped on the shoulder to deal with a different matter. Sensing an impending collision, the second squad car pulled off the shoulder and onto a grassy embankment. This second squad car was driven by Trooper Timothy Zych and was also manned by a second officer, Trooper George Kuzelka. After Trooper Cornier drove by them in pursuit of the Demas vehicle, Troopers Zych and Kuzelka joined the chase.

Demas thereafter abruptly exited the Stevenson at Harlem Avenue, striking the curb and causing his right front tire to blow out. Notwithstanding the loss of the tire, Demas continued racing down Harlem on the rim of the wheel at speeds of up to 65 m.p.h. The troopers attempted a partial "rolling roadblock" to slow the Demas vehicle, but Demas drove into the oncoming traffic lanes so as to remove himself from the partial rolling roadblock. Demas narrowly avoided numerous head-on collisions as he proceeded against the oncoming traffic.

The troopers lost Demas when he turned left onto 39th Street (also known as Pershing Road), because the

troopers had to wait for oncoming traffic to clear the intersection. Demas continued speeding down 39th Street until, as he ran a red light at the intersection with Ogden Avenue, Demas collided with the vehicle in which Claimant's decedent was a passenger. The driver of that vehicle has no memory of the actual collision. An eyewitness in a nearby vehicle, however, estimated that Demas was driving between 70 and 80 m.p.h. when he collided with the decedent's vehicle.

The entire Demas chase, from inception all the way to collision, lasted perhaps five minutes.

Claimant alleges that the troopers were negligent in pursuing, and in continuing to pursue, Demas, that the troopers failed to comply with various Illinois State Police directives and policies governing pursuits, and that the troopers' actions were the proximate cause of the collision between Demas' vehicle and the vehicle in which Claimant's decedent was a passenger.

With respect to the troopers' operation of their squad cars, section 11—205 of the Illinois Vehicle Code (625 ILCS 5/11—205) provides, in pertinent part:

"(b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

 (c) The driver of an authorized emergency vehicle may:

 1. Park or stand, irrespective of the provisions of this Chapter;

 2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation;

 3. Exceed the maximum speed limits so long as he does not endanger life or property;

 4. Disregard regulations governing direction of movement or turning in specified directions.

 (d) The exceptions herein granted to an authorized emergency vehicle, other than a police vehicle, shall apply only when the vehicle is making use of either an audible signal when in motion or visual signals meeting the requirements of Section 12—215 of this Act.

(e) The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, not do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." 625 ILCS 5/11—205.

Our focus thus turns to the portions of subsection (e) which impose a duty for the troopers to drive with "due regard for the safety of all persons" and which would impose liability for the troopers' "reckless disregard for the safety of others." All of the reported Illinois Court decisions we have reviewed utilized a "wilful and wanton" standard in assessing a police officer's conduct. (See, *e.g.*, *Laco v. City of Chicago* (1st Dist., 1987), 154 Ill. App. 3d 498, 507 N.E.2d 64; and *Breck v. Cortez* (2nd Dist., 1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.) However, that standard applies to those cases because the parties defendant are always local officers and their municipalities, both of whom are entitled to special immunities afforded by the Local Governmental and Governmental Employees Tort Immunity Act. (745 ILCS 10/1—101 *et seq.*) No corresponding statutory tort immunity is available at present to the State itself or to the State's employees, so an ordinary negligence standard applies in relating section 11—205 of the Vehicle Code to the troopers' conduct.

We are not aware of any Illinois case law construing section 11—205 in similar circumstances in conjunction with an ordinary negligence standard, so we look to the rulings of other jurisdictions for guidance. In considering an almost identical statutory provision, the Supreme Court of Kansas reviewed decisions from numerous states and held that the duty to drive with "due regard for the safety of all persons" applied only to the police officer's actual operation of his *own* vehicle and *not* to the officer's decision to pursue or to continue to pursue a law violator:

"If the officer is in compliance with the statute in the operation of his own vehicle, he is entitled to the privileges and immunities afforded by the

statute and is not vicariously liable or responsible for the reckless or negligent acts of the law violator he is pursuing. The officer is not the insurer of the fleeing law violator. The officer in such circumstances has breached no duty owed to persons injured by the fleeing violator's own negligence or wanton conduct and, accordingly, as a matter of law the officer has not committed a tort upon such injured persons." *Thornton v. Shore* (Kan. 1983), 233 Kan. 737, 753, 666 P.2d 655, 668.

We agree with the reasoning of the Kansas Supreme Court and the favorable decisions to which it cites and, thus, adopt the same interpretation of section 11—205 of the Illinois Vehicle Code.

Applying the *Thornton* standard here, we find that there is insufficient evidence to conclude that the troopers' actual operation of their own vehicles either caused, or materially contributed to, the eventual collision. The troopers' vehicles themselves never collided with anyone, and they similarly did not drive in such a manner so as to force Demas to either take the ill-fated route or to recklessly speed through the red light in question. All of those poor choices were Demas' and Demas' alone.

With respect to the alleged violations of various Illinois State Police directives and policies governing pursuits, we find that, even if one were to assume, *arguendo*, that the troopers had committed each and every one of the violations, there is insufficient evidence to connect those violations to the eventual collision. For instance, while serious vehicular disaster could easily have struck at any point during the partial ""rolling roadblock" down Harlem Avenue, no such pile-up actually occurred, and the "rolling roadblock" fortuitously proceeded without incident.

Proximate cause is generally defined as "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened." (Blashfield

Automobile Law and Practice, Third Edition, section 53.2.) Here, to argue that the troopers' technically faulty pursuit caused Demas to continue to speed may be factually true, but it does not follow that the State is, thereby, liable for the results of Demas' continued speeding:

"It is well known that 'the wicked flee when no man pursueth.' It is readily deducible that if a suspect is fleeing at high speed to escape a pursuing police car, the suspect will not necessarily reduce speed after disappearing from [the officer's] sight over a hill or around a curve, but [that the suspect] will continue at high speed until his escape is assured." *Nevill v. City of Tullahoma* (Tenn. 1988), 756 S.W.2d 226, 229, quoting an unpublished previous decision of the Tennessee Court of Appeals in the same litigation.

In other words, the control of preventing the collision here was always solely in Demas' hands; all he had to do was to obey the law and stop when requested to do so by the troopers. Demas' failure to do so was a criminal and negligent act, a superseding cause, which absolved the troopers and the State of liability for the harm which Demas eventually caused.

Further, such a result is warranted here as a matter of policy, for a contrary interpretation would *oblige* troopers in similar situations to always allow suspects to escape, thereby only encouraging their flight into congested areas. The New York Court of Claims long ago analyzed and rejected the logical absurdity of such a position:

"In the presence of a violation of law it is the officer's duty to take steps to suppress the offense and apprehend the offender. At its inception the offense being committed was only a traffic infraction. However, it developed, in the opinion of the Court, into reckless driving, a misdemeanor, also into resisting an officer, and other crimes which could be made out of the incident as it developed.

Claimants' predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer to pursue, at an otherwise lawful rate of speed a lawbreaker traveling at an unlawful rate of speed or to ignore him in the first place.

An operator who is speeding, or who is a reckless driver on the highway, would know that all he had to do was to go faster—and under claimants' theory escape would be possible—there would be no chase. A burglar, bank robber or

any other felon could threaten to shoot and under claimants' theory escape would be possible and arrest avoided. It is fantastic to further expand claimants' theory—such thinking would place a police officer in the same category as the Marquis of Queensbury in a pier six brawl." *Wrubel v. State* (N.Y. Ct. Cl. 1958), 174 N.Y.S.2d 687, 689.

Accordingly, while it is certainly possible for a trooper to be negligent, and to thereby create liability for the State in a pursuit, we find that this Claimant has failed to prove that her decedent's injuries were, in fact, causally related to the troopers' actions here; rather, we find that the sole proximate cause of this accident was the manner in which Mr. Demas conducted himself.

It is therefore ordered that this claim is denied and dismissed with prejudice.

## ORDER

HESS, J.

Before this Court is Claimant's petition requesting rehearing pursuant to section 790.220 of the Court of Claims Regulations (74 Ill. Adm. Code 790.220). Claimant properly submitted the petition for rehearing according to section 790.220 and the Court, having an opportunity to review the record available for review as outlined by section 790.220, has reached a decision.

Claimant alleges in its petition that the earlier opinion, filed on November 19, 1998, was "a product of inappropriate and nonjudicious selective fact-finding, in order to prejudice the meritorious claim filed, and proven, by Petitioner." (Petitioner's brief at page 5-6.) Allegations of inappropriate and nonjudicious decision making are taken seriously by this Court. However, the rule of law expressed in precedent is of utmost importance. The factual situation and the interpretation that Claimant wishes to spin simply do not fit within the rule of law at this

time. Claimant's brief wholly fails to convince this Court that her approach is appropriate or judicious.

In her brief, Claimant first addresses liability. In a little over a page Claimant cites to five separate cases which she has not analyzed. Rather, Claimant makes unsupported statements of the law, which she evidently would have this Court apply without considering the actual case. *Perrine v. Charles T. Bisch & Sons* (1952), 346 Ill. App. 321, 105 N.E.2d 543, is a case in which the plaintiff was a <u>passenger</u> in the emergency vehicle which crashed. *City of Kankakee v. Vreeman* (1988), 177 Ill. App. 3d 835, 532 N.E.2d 1058, 127 Ill. Dec. 229, presented a case in which the traffic accident which was the subject of the lawsuit occurred between a <u>police car</u> and the defendant. *Kirshenbaum v. City of Chicago* (1976), 43 Ill. App. 3d 529, 357 N.E.2d 571, *Koepp v. State* (1993), 46 Ill. Ct. Cl. 344 and *Baumann v. State* (1981), 34 Ill. Ct. Cl. 140 all presented situations where the <u>police car</u> crashed into the plaintiff after running through a traffic signal without the siren activated.

Here, the pursued perpetrator caused the Claimant's injury. The Illinois State Police were in pursuit of the perpetrator, as is their duty. Claimant's argument that the State should be held liable for the acts of a private citizen who is breaking the law is disingenuous at best. In this Court's earlier opinion, it cited the only other decision which was <u>factually</u> on point. We adopted the rule laid down by the Kansas Supreme Court:

"The officer in such circumstances has breached no duty owed to persons injured by the fleeing violator's own negligence or wanton conduct and, accordingly, as a matter of law the officer has not committed a tort upon such injured persons." *Thornton v. Shore* (Kan. 1983), 233 Kan. 737, 753, 666 P.2d 655, 668.

The evidence presented throughout these proceedings indicated that the deceased was struck by the fleeing perpetrator, not by the police officer.

134

If the Claimant feels that this finding was reached due to "selective fact-finding" (Claimant's brief, at page 6), evidence supporting this accusation should have been presented to the Court. Claimant has not presented any evidence supporting this empty accusation. Claimant's tactic was apparently to accuse the Court of neglecting to perform its duty, while failing to support her own position with authority and reason. The cited authorities simply did not apply to the instant factual circumstance.

Therefore, Claimant's petition requesting rehearing pursuant to section 790.220 is hereby granted and Claimant's rehearing is hereby denied with prejudice. It is hereby ordered.