# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-1706
_____

KESHON BRAINARD WILLIAMS,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____

On appeal from the Circuit Court for Duval County.
Mark Borello, Judge.

February 28, 2018

WINSOR, J.

A jury convicted Keshon Williams of attempted second-degree murder, possession of a firearm by a convicted felon, and two counts of aggravated assault with a deadly weapon. Williams received a thirty-year sentence for the attempted murder, another thirty-year sentence for the firearm possession, and shorter concurrent terms for the aggravated assaults. On appeal, Williams challenges only the aggravated assault convictions.

The events that led to Williams's convictions all took place at some sort of neighborhood bonfire. Williams was there, as was his longtime friend Elroy Howard. In a tense and profane exchange, Williams accused Howard of speaking ill of Williams's grandmother. For whatever reason, Williams then pulled out a

MAK-90 semiautomatic rifle, pointed it at Howard, and fired off several shots in Howard's general direction.[1] This was the basis for the attempted murder and firearm-possession convictions, neither of which Williams challenges.

That leaves the two aggravated assault convictions, which Williams argues are not supported by evidence. The victims of the charged assaults were two of Williams's other longtime friends, Fredrika Dixon and Gary Byrd, who were standing nearby when Williams shot at Howard. Williams argues that he never actually threatened either of them, so the trial court should have granted his acquittal motion as to the assault charges. We review this claim de novo. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002).

It is true that there was no evidence that Williams pointed his gun at Dixon or Byrd. And it is true that there was no evidence that Williams explicitly threatened either of them. He never said, for example, "I'm going to kill you." *Cf. Schepman v. State*, 146 So. 3d 1278, 1285 (Fla. 5th DCA 2014). But an aggravated assault conviction requires neither a pointed gun nor an explicit threat. Instead, it requires an "assault," *see* section 784.021(1)(a), Florida Statutes (2014), which is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011(1), Fla. Stat. (2014).[2] So the first question is whether a reasonable jury could have concluded from the evidence that Williams intentionally and unlawfully threatened Dixon and Byrd "by word or act." In addressing this question, we consider the evidence in a light most favorable to the State. *See Lukaszewski v. State*, 111 So. 3d 212, 213 (Fla. 1st DCA 2013).

---

[1] One detective referred to the rifle as an AK-47, but a Florida Department of Law Enforcement firearms analyst testified it was a MAK-90.

[2] It also requires "a deadly weapon without intent to kill" or "an intent to commit a felony." § 784.021(1). There is no dispute that Williams had a deadly weapon.

The jury heard evidence that Williams told Howard he wanted to kill him "so bad" he could "taste it." Around the same time, Williams said of Dixon and Byrd: "If those two motherfuckers want to stand right there I'll kill your ass. I know them two bitches going to put me in prison." Williams then started shooting in several directions—not just towards Howard—striking a fence, a gate, a chair, and a house. At some point, Byrd confronted Williams, trying to convince Williams to stop. Williams responded with a racial slur and a demand that Byrd "shut the hell up." Byrd and Dixon both hid behind a vehicle until Williams rode away on his bicycle.

From these facts, we have little trouble concluding that a reasonable jury could find Williams intentionally threatened Byrd. When Williams demanded that Byrd shut up, Williams was armed with a semiautomatic rifle, had just tried to kill someone, and had just screamed a racial slur at Byrd. A jury could infer from this that the demand to "shut the hell up" was more than an everyday request—that it was an intentional threat to harm Byrd if he continued talking. *Cf. Manuel v. State*, 16 So. 3d 833, 835 (Fla. 1st DCA 2005) ("[T]aking the evidence in a light most favorable to the State, intent can be inferred from the circumstances of the incident.").

It is a closer call as to Dixon. Williams said if Dixon wanted to stand where she stood, "I'll kill your ass," presumably referring to Howard. He also said that she "might want to move out from around here"—or something like that. And he said he knew she would put him in prison. Although we cannot discern exactly what Williams hoped to communicate, a reasonable jury could conclude from these statements—and the surrounding circumstances—that Williams intentionally threatened Dixon with harm.

Last, as to both Byrd and Dixon, a reasonable jury could find Williams had an apparent ability to do harm and that his firing the rifle and trying to kill someone would create a well-founded fear that violence was imminent. The trial court correctly denied the motion for judgment of acquittal.

AFFIRMED.

LEWIS and ROBERTS, JJ., concur.

3

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Andy Thomas, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Kaitlin Weiss, Assistant Attorney General, and Virginia Harris, Assistant Attorney General, Tallahassee, for Appellee.