# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2994
_____

DAVID L. ROSS,

    Appellant,

    v.

CITY OF JACKSONVILLE,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Kevin Blazs, Judge.

June 12, 2019

B.L. THOMAS, C.J.

David Ross appeals the trial court's order which granted summary judgment to the City of Jacksonville. The order ruled that the city was not liable for injuries sustained by Appellant, whose vehicle was struck by a fleeing suspect eluding law-enforcement officer. The action arose when the suspect, a fourteen-year-old driver, sped out of a driveway, momentarily losing control, and drove directly toward several pedestrians who barely managed to avoid the car and escape serious injury. Appellant sued the Jacksonville Sheriff's Office alleging that the officers' overly aggressive pursuit breached their duty to conduct law enforcement activities in a manner that does not needlessly endanger Duval County citizens.

Appellee filed a motion for summary judgment, arguing that the city was immune from suit under section 768.28(9)(d)(1),

Florida Statutes. That statute provides that the employing agency of a law enforcement officer is not liable for injuries caused by a person being pursued by law enforcement, if 1) the pursuing officers did not act in a manner "which is so reckless or wanting in care as to constitute a disregard of human life, human rights, safety, or the property of another"; 2) the pursuing officers who initiated pursuit reasonably believed the person fleeing had committed a forcible felony as defined in section 776.08, Florida Statutes; and 3) the pursuit was conducted in accord with a written agency policy that "contain[ed] specific procedures concerning the proper method to initiate and terminate high-speed pursuit (and the) law enforcement officer ...received instructional training" on the policy.

Appellee attached to the motion an affidavit from the officer who initiated the pursuit, in which the officer stated that he saw a vehicle speed out of a driveway, causing the front end of the vehicle to spin around and causing three or four pedestrians in front of the driveway to jump to avoid being hit by the vehicle. Appellee also attached an operational order describing the Jacksonville Sheriff's policy for vehicle pursuits. In addition, the City provided an affidavit from another sheriff's officer stating that after reviewing the pursuing officer's report, he determined that the pursuit was conducted in compliance with the Sheriff's Office's standards.

At the summary judgment hearing, Appellee described the route of the pursuit based on the vehicle-pursuit report. After the initial officer began pursuit, the suspect continued driving down side streets, passing other pedestrians who also jumped out of the way, before the first officer lost sight of the driver and radioed other officers to look for the fleeing car. The suspect and law enforcement reached speeds of eighty miles per hour. The car made a U-turn and drove on pedestrian sidewalks, hit a vehicle and continued driving before another officer threw a "stop stick" to puncture the tires of the fleeing car. The fleeing car hit Appellee's car, and the driver of the fleeing car got out and ran before being apprehended by the officer who initiated the pursuit. The pursuit covered a total of 5.5 miles. Appellee noted that the officer indicated in the report that he initiated pursuit because the driver committed "Felony, fleeing, eluding and reckless driving."

The trial court found that the evidence viewed in the light most favorable to Appellant did not establish that the pursuit was conducted in a manner so reckless and wanton as to constitute a disregard for human life, "[g]iven the limited distance, brief duration, and the exercise of judgment by [the initial officer] . . . in his decision to terminate and then reinitiate pursuit in cooperation with other officers." The court also found that the initial officer pursued the driver because he saw the car almost strike pedestrians, and thus the driver witnessed an aggravated assault, a forcible felony. The court found that the Jacksonville Sheriff's Office's vehicle-pursuit policies contained detailed provisions on initiating and terminating pursuit, and there was no factual dispute regarding these policies. The court ruled that Appellee was not liable for Appellant's injury under section 768.28(9)(d), Florida Statutes, and because there were no genuine issue of material disputed fact, the court granted Appellee's motion for summary judgment.

*Analysis*

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (citing *Menendez v. Palms West Condominium Ass'n,* 736 So. 2d 58 (Fla. 1st DCA 1999)). Thus, our standard of review is de novo. *Id.*

Appellant first asserts that a material factual dispute existed as to whether the initial officer acted so recklessly or in a manner "wanting in care as to constitute a disregard of human life, human rights, safety or the property of another." Section 768.28(9) (d)(1), Florida Statutes. Appellee argues that the undisputed facts do not establish that the pursuit was so reckless as to constitute a disregard for human life as so described in the controlling statute.

The question of whether an officer acted with disregard for human rights may be answered summarily as a question of law, or decided by a trier of fact, depending on the facts presented. *See McGhee v. Volusia Cty.*, 679 So. 2d 729, 733 n.7 (Fla. 1996) (holding that "the question must be put to the fact-finder whether [a sheriff's deputy] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights,

3

safety, or property" but noting "that this holding is based on the questions presented by the facts at hand. There may be cases in which summary dismissal would be proper based on different facts").

The current version of section 768.28(9)(d) was enacted in 2006. Ch. 2006-234, Laws of Fla. No appellate court has interpreted that section. Section 768.22(9)(a), a similar provision, grants immunity from liability and suit to individual state officers, agents, and employees acting within the scope of employment if, *inter alia,* they do not act "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." While this language is slightly different from the language of subsection 768.28(9)(d)(1), both subsections provide immunity on similar bases, that is, whether the state officer or employee engaged in conduct that was even more egregious than gross negligence. *Elliott v. Dugger,* 579 So. 2d 827, 830 (Fla. 1st DCA 1991). Thus, cases interpreting section 768.28(9)(a) are informative and instructive when interpreting subsection (9)(d)(1).

In *Dugger*, this court held that acts of gross negligence do not rise to the level of recklessness to violate section 768.28(9), as "section 768.28(9)(a) grants immunity to a state employee who merely acts with gross negligence and not the greater degree of culpability set forth in the statute." 579 So. 2d at 830. The lesser culpability of gross negligence is defined as "that course of conduct which a reasonable and prudent [person] would know would probably and most likely result in injury to persons or property." *Carraway v. Revell*, 116 So. 2d 16, 22 (Fla. 1959).

Here, the undisputed facts viewed in the light most favorable to Appellant do not establish that the initial officer's actions were so reckless as to constitute disregard for human life, rights, safety, or property. Appellant asserts that because the officer drove eighty miles per hour down roads that are typically crowded, the officer acted recklessly. But this argument, if accepted, would render all high-speed chases on public roads by law enforcement reckless, and this proposition was rejected in *City of Miami v. Horne*, 198 So. 2d 10, 12 (Fla. 1967) (rejecting the argument that an officer engaged in "reckless conduct simply because he pursued the offender, on the theory that mere pursuit creates a highway danger," and holding that a ticketing officer chasing a fleeing

4

motorist at ninety-five miles per hour in a thirty-mile-per-hour zone was not negligent, rejecting argument that officers must pursue offenders "at lawful rates of speed").

While it is correct that the high-speed chase was found to deprive officers of immunity in *City of Pinellas Park v. Brown*, 604 So. 2d 1222 (Fla. 1992), that pursuit covered five times the distance as in the present case, reached speeds of 120 miles per hour and involved officers who disregarded multiple traffic signals and an order to terminate pursuit. The fleeing suspect in that case hit the deceased victims' car at 90-miles-per-hour, killing two people. More significantly, the supreme court in *Pinellas Park* created a common-law duty of care as a matter of public policy that imposed liability for negligence, a much lower legal threshold than the legislature has since required in section 768.28(9)(d)(1), Florida Statutes, which provides immunity *unless* officers engaged in conduct that demonstrated recklessness and was so wanting in care as to show a "disregard for human life, rights and property." Thus, the legal duty the court created in *Pinellas Park* as public policy was far broader and more inclusive than the duty of care enacted by the legislature in granting sovereign immunity for officers in conducting high-speed pursuit in section 768.28(9)(d)(1), Florida Statutes. In addition to the distinguishing facts of *Pinellas Park,* that decision's limitation of sovereign immunity cannot control over the legislature's authority to define sovereign immunity of law enforcement officers pursuing suspects who then injure innocent third parties.

Under the state's strict separation of powers in Article II, section three, Florida Constitution, the legislature is supreme in deciding when and how to limit or waive sovereign immunity:

> The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its own permission, has been a fundamental tenet of Anglo–American jurisprudence for centuries and is based on the principle that "the King can do no wrong." The doctrine was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature. The original justification for incorporating the doctrine into American jurisprudence was the logical and practical ground that there can be no

5

legal right as against the authority that makes the law on which the right depends. Florida law has enunciated three policy considerations that underpin the doctrine of sovereign immunity. First is the preservation of the constitutional principle of separation of powers. Second is the protection of the public treasury. Third is the maintenance of the orderly administration of government.

However, the Florida Constitution provides that the Legislature can abrogate the state's sovereign immunity. *See* art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."). *Only the Legislature has authority to enact a general law that waives the state's sovereign immunity*. Further, any waiver of sovereign immunity must be clear and unequivocal. In interpreting such legislative waivers of sovereign immunity, this Court has stated that it must strictly construe the waiver. Moreover, waiver will not be found as a product of inference or implication.

*Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471–72 (Fla. 2005) (emphasis added) (internal quotations and citations omitted).

Cases describing what actions do not constitute negligence under the earlier standard are instructive here because if negligence was not established in those cases, similar facts could never rise to the level required to show a waiver of sovereign immunity under section 768.28(9)(d)(1), Florida Statutes. For example, pursuits involving speeding on public roads at eighty miles per hour while violating a department policy were deemed *not* to be negligent in *Porter v. State, Dep't of Agriculture & Consumer Servs.*, 689 So. 2d 1152 (Fla. 1st DCA 1997), much less rising to a level above gross negligence required to constitute a disregard for human life under section 768.28(9)(d).

The pursuit in the present case was conducted in a manner "necessary to apprehend the offender" without exceeding "proper and rational bounds" of conduct. *Horne*, 198 So. 2d at 13. Thus,

Appellee satisfied the first prong of section 768.28(9)(d), Florida Statutes.

On the second prong, whether the officer reasonably believed the fleeing motorist had committed a forcible felony as defined in section 776.08, Appellant argues that documents prepared contemporaneous to the incident demonstrate that the officer initiated the pursuit because the motorist committed "reckless driving" and "fleeing and eluding," neither of which are forcible felonies under section 776.08, Florida Statutes. Appellee argues that its affidavit stated that three or four people had to jump out of the way of the fleeing car when it backed out of a driveway, demonstrating that the officer observed an aggravated assault, a forcible felony as defined in section 776.08, Florida Statutes. Appellee argues that the police report forms limited officers to listing two reasons for initiating and did not require them to list every reason, and therefore the officer's listing of "reckless driving" and "fleeing and eluding" on the form does not establish that he did not observe an aggravated assault.

The officer stated in his affidavit that he initially saw the vehicle in question pull out of a driveway, causing its front end to spin around, and three or four pedestrians had to jump out of the way to avoid serious injury. We hold therefore that the officer witnessed an aggravated assault, a forcible felony under section 776.08, Florida Statutes. *See* § 784.021(1)(a), Fla. Stat. (2019) (an aggravated assault includes an assault with a deadly weapon).

Section 768.28(9)(d) does not require an arrest or citation for a forcible felony, but only that the pursuing officer reasonably believe the person being pursued had committed an aggravated felony. The Vehicle Pursuit Report and affidavit establish that the officer observed a forcible felony, a fact not disputed by the absence of an arrest or citation for aggravated assault. Thus, Appellee also met its burden regarding the second prong under Section 768.28(9)(d)(2).

On the third prong, whether the pursuit was conducted in accordance with a written policy governing high-speed pursuit adopted by the employing agency, Appellant argues that officers violated the relevant vehicle-pursuit policy. Appellant first argues that the officers violated a section of the policy that requires

7

officers to evaluate whether the risk to public inherent in pursuit is offset by the risk to the public by not immediately apprehending the violator. But the arrest report and the officer's affidavit indicate that members of the public were at risk because of the driver's actions. The undisputed facts therefore show that officers considered public safety in compliance with the agency's written policy.

Appellant next argues that officers violated a section of the policy prohibiting officers from continuing to follow a violator in an attempt to maintain visual observation once pursuit has been terminated. The evidence established, however, that the initial officer stopped pursuing the fleeing vehicle when it left his sight, and that he only continued pursuit after the vehicle reentered his sight. He did not follow the suspect in an attempt "to maintain visual observation," and therefore the officer acted in accordance with the written policy.

Appellant also argues the officers violated the policy by failing to terminate pursuit when the risks of pursuit outweighed the need for apprehension. But in addition to the initial endangerment of the pedestrians near the driveway, the arrest report stated that the fleeing vehicle ran several cars off the road and repeatedly drove on the sidewalk to get around traffic. The evidence thus established that the fleeing driver endangered the public before the pursuit and continued to endanger the public during pursuit, and as such established that the need for apprehension continued throughout the pursuit. The evidence does not establish that the officers violated written policy and does not dispute the lieutenant's assessment in his affidavit that the pursuit was conducted in accordance with the policy. The undisputed facts viewed in the light most favorable to Appellant therefore establish that the officers acted in accordance with a written policy, satisfying the third prong of section 768.28(9)(d), Florida Statutes.

Finally, Appellant argues that the trial court applied an incorrect "qualified immunity" standard instead of an "immunity from liability" standard. Appellant is correct that, unlike section 768.28(9)(a), which grants individual state officers immunity from judgment *and* suit in certain cases, section 768.28(9)(d) only grants employing agencies immunity from judgment. However, in

8

entering summary judgment, the court properly determined that Appellee was not liable based on the undisputed material facts. The court applied the correct statute, and ruled that based on the presented facts, Appellee satisfied the elements of section 768.28(9)(d), and entered judgment in Appellee's favor. The court did not rule that Appellee was immune from suit, but rather ruled that based on the undisputed facts Appellee was immune from judgment, in accordance with section 768.28(9)(d), Florida Statutes.

The undisputed facts establish that Appellee was not liable under section 768.28(9)(d), Florida Statutes. Based on the undisputed facts, no reasonable jury could have found that the officers acted recklessly or with such a lack of care as to demonstrate a disregard for human life, safety or property. Thus, summary judgment was proper because sovereign immunity was not waived based on these facts under section 768.28(9)(d).

AFFIRMED.

JAY, J., concurs; BILBREY, J., concurs in result with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

BILBREY, J., concurring in result.

I agree with much of what the majority concludes and with the result reached. I write to discuss the second prong for an "employing agency of a law enforcement officer" to claim immunity under section 768.28(9)(d), Florida Statutes, that is whether "the officer reasonably believes that the person fleeing has committed a forcible felony" and to explain that while I may disagree with some of the majority's reasoning on this issue, I nonetheless believe we are correct to affirm.

I agree with the majority that the crimes listed on the police report forms were not conclusive, and the officers could have been in pursuit after observing a forcible felony even though no forcible felony was listed on the forms. Appellant's only argument

regarding the forcible felony prong for immunity is that we should ignore the purported "self-serving" statements by the Jacksonville Sheriff's officers.[*] I agree with the majority that we are correct to consider the reports and statements contained therein.

The majority opinion holds "that the officer witnessed an aggravated assault, a forcible felony under section 776.08, Florida Statutes." Majority op. at 7. I do not necessarily agree, but still believe we are correct to affirm. An aggravated assault can be proven with evidence of an assault with a deadly weapon. § 784.021(1)(a), Fla. Stat. For almost a hundred years, Florida law has held that intentionally putting a victim in fear of getting hit by an automobile qualifies as aggravated assault. *See Williamson v. State*, 111 So. 124 (Fla. 1926). But here proof of intent is questionable. *See* § 784.011(1) (defining assault, in part, as "an intentional, unlawful threat by word or act to do violence to the person of another"). To prove an assault, while there is no requirement to show that the perpetrator intended "to do violence to the victim," it must be shown that there was "an intentional threat that creates a fear of imminent violence." *Pinkney v. State*, 74 So. 3d 572, 576 (Fla. 2d DCA 2011) (en banc); *see also Williams v. State*, 238 So. 3d 915 (Fla. 1st DCA 2018).

Undoubtedly, the pedestrians who were almost hit by the fleeing driver were afraid of being struck by the vehicle. But did the fourteen-year-old driver intend to put the pedestrians in fear of being struck or did the driver recklessly endanger the pedestrians? *See* § 316.192(1)(a), Fla. Stat. (defining reckless driving as "willful or wanton disregard for the safety of persons or property"); *Anderson v. State*, 247 So. 3d 680 (Fla. 1st DCA 2018), *rev. granted*, SC18-1059, 2018 WL 6681770 (Fla. Dec. 19, 2018) (distinguishing the crime of reckless driving from aggravated assault). While aggravated assault is a forcible felony, reckless driving is not. § 776.08, Fla. Stat. On this record, I do not believe we can say a forcible felony was committed, and I would not go as

---

[*] Of course any statement in support of summary judgment would likely be self-serving. *See* Fla. R. Civ. P. 1.510(c) (defining "summary judgment evidence" to be used by the proponent of a motion for summary judgment).

far as the majority in definitively concluding a forcible felony occurred.

However, the Appellant does not make this argument regarding proof of intent being lacking. Barring some fundamental error, not present here, we can only reverse when "an appellant raises claims of error." *D.H. v. Adept Cmty. Servs., Inc.*, 43 Fla. L. Weekly S533, S535, 2018 WL 5660595, *6 (Fla. Nov. 1, 2018). Appellant does argue that the pursuit occurred because of reckless driving, but I do not believe the intent issue I mention was raised by Appellant such that we could reverse on that ground. *See Doe v. Baptist Primary Care, Inc.*, 177 So. 3d 669 (Fla. 1st DCA 2015) (holding that an appellate court will only consider points raised in the initial brief or the points are deemed waived). I therefore believe that affirmance is the correct result.

_____

Brett A. Hastings, Jacksonville Beach, for Appellant.

R. Anthony Salem, Assistant General Counsel, City of Jacksonville, Jacksonville, for Appellee.